Meegan B. Brooks (CA 298570)
Steven M. Selna (CA 133409)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone:   628.600.2250
Facsimile:   628.221.5828
mbrooks@beneschlaw.com
sselna@beneschlaw.com

Michael D. Meuti (CA 227939)
Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone:     216.363.4500
mmeuti@beneschlaw.com

Attorneys for Defendant Hismile, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER LEDESMA and HELEN TANAKA individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HISMILE, INC.,<br><br>Defendant. | Case No. 4:24-cv-03626-KAW<br><br>**DEFENDANT HISMILE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          October 3, 2024<br>Time:          1:30 p.m.<br><br>Complaint Filed:     June 14, 2024 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on October 3, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Kandis A. Westmore of the United States District Court for the Northern District of California via Zoom, in the United States Courthouse, 1301 Clay Street, Oakland, CA 94612, Defendant Hismile, Inc. ("HI") will and hereby does move this Court for an order dismissing the Complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction or in the alternative, under Rule 12(b)(7) for failing to join a necessary party.

This Motion is brought on the grounds that Plaintiffs lack standing to sue HI. The conduct that they allege caused their injury was not undertaken by HI, but instead by a sister company that Plaintiffs have refused to name as a defendant. Because HI could not have caused the injuries of which Plaintiffs complain, the causal connection necessary to make their alleged injuries fairly traceable to HI's conduct is lacking. Plaintiffs accordingly lack standing to sue HI. In the alternative, Plaintiffs' failure to sue HI's sister company, Hismile Pty. Ltd. ("HPL"), renders it impossible for the Court to grant Plaintiffs the complete relief that they seek. The Court should thus dismiss their claim under Rule 12(b)(7) and/or order Plaintiffs to amend their Complaint to name HPL as a defendant.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Jack Carroll and Steven Selna and exhibits thereto, any other matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.

Dated:  August 12, 2024

Respectfully submitted,

*s/ Meegan B. Brooks*
MEEGAN B. BROOKS (CA 298570)
STEVEN M. SELNA (CA 133409)
MICHAEL D. MEUTI (CA 227939)
Benesch, Friedlander, Coplan & Aronoff LLP

Attorneys for Defendant Hismile, Inc.

# <u>TABLE OF CONTENTS</u>

Page

**I.      INTRODUCTION** ................................................................................................. 1

**II.     ISSUES PRESENTED** ........................................................................................ 2

**III.    FACTUAL BACKGROUND** ............................................................................... 3

      **A.**  **Hismile, Inc. is the U.S. affiliate of an Australian company that markets and sells oral cosmetic products** ......................................................... 3

      **B.**  **Plaintiffs allege that they purchased Hismile products that were deceptively marketed, primarily on social media** .................................... 3

      **C.**  **Hismile, Inc. notified Plaintiffs' counsel of deficiencies in their Complaint, but Plaintiffs' counsel refused to remedy them** ........................ 5

**IV.    APPLICABLE LEGAL STANDARDS** ............................................................... 6

      **A.**  **Rule 12(b)(1)** ...................................................................................... 6

      **B.**  **Rule 12(b)(7)** ...................................................................................... 6

**V.     ARGUMENT** ..................................................................................................... 8

      **A.**  **Plaintiffs lack standing, so the Court lacks jurisdiction and must dismiss under Rule 12(b)(1)** ........................................................................ 8

           *1.*  *To establish standing, Plaintiffs must each identify conduct by HI that caused their alleged injuries* ............................................... 9

           *2.*  *Plaintiffs' alleged injuries from social-media ads are not fairly traceable to HI* ................................................................. 10

           *3.*  *Plaintiffs could not have suffered injury from either of the statements that they allege appeared on the Website* ..................... 12

           *4.*  *Plaintiffs lack standing to sue over products they never purchased* ............... 13

      **B.**  **Plaintiffs failed to join a necessary party, even after being told that they needed to do so** ........................................................................ 13

           *1.*  *HPL is a necessary party under Rule 19(a)* ..................................... 14

           *2.*  *Plaintiffs refuse to join HPL and refuse to explain why* ..................... 15

           *3.*  *HPL is indispensable, so the Court should dismiss the case if Plaintiffs refuse to join HPL* ........................................................ 16

**VI.    CONCLUSION** ................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agrocomplect, AD v. Republic of Iraq*,
 524 F. Supp. 2d 16 (D.D.C. 2007) ............................................................................13

*Alston v. Advanced Brands & Importing Co.*,
 494 F.3d 562 (6th Cir. 2007) .....................................................................................9

*Ariz. Contrs. Ass'n v. Napolitano*,
 526 F. Supp. 2d 968 (D. Ariz. 2007) .........................................................................9

*Cal. Dump Truck Owners Ass'n v. Nichols*,
 924 F. Supp. 2d 1126 (E.D. Cal. 2012), *aff'd*, 778 F.3d 1119 (9th Cir. 2015),
 *withdrawn from bound volume, and aff'd*, 784 F.3d 500 (9th Cir. 2015) ...........................15

*Cattie v. Walmart Stores*,
 504 F. Supp. 2d 939 (S.D. Cal. 2007) .........................................................................11

*Chamber of Comm. of the U.S. v. Edmondson*,
 594 F.3d 742 (10th Cir. 2010) .....................................................................................13

*Chaplin v. Walmart, Inc.*,
 No. 3:23-CV-00878-WHO, 2023 WL 4843956 (N.D. Cal. May 25, 2023) .......................9

*Colwell v. Dep't of Health and Human Servs.*,
 558 F.3d 1112 (9th Cir. 2009) .....................................................................................6

*Davis Cos. v. Emerald Casino, Inc.*,
 268 F.3d 477 (7th Cir. 2001) .......................................................................................7

*Dawavendewa v. Salt River Project Agric. Improvement Dist.*,
 276 F.3d 1150 (9th Cir. 2002) .....................................................................................14

*Dumann Realty, LLC v. Faust*,
 267 F.R.D. 101 (S.D.N.Y. 2010) .................................................................................7

*Duquesne Light Co. v. U.S. EPA*,
 166 F.3d 609 (3d Cir. 1999) ........................................................................................8

*E.E.O.C. v. Peabody W. Coal Co.*,
 400 F.3d 774 (9th Cir. 2005) .......................................................................................7

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
 528 U.S. 167 (2000) ....................................................................................................8

*Fulani v. Brady,*
  935 F.2d 1324 (D.C. Cir. 1991) ...................................................................................................8

*Gentges v. Trend Micro,*
  No. C 11-5574 SBA, 2012 WL 2792442 (N.D. Cal. July 9, 2012) .......................................10

*Granfield v. NVIDIA Corp.,*
  No. 11–cv–5403–JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012) .....................................9

*Habecker v. Town of Estes Park, Colo.,*
  518 F.3d 1217 (10th Cir. 2008) ..............................................................................................9

*Larsen v. Trader Joe's Co.,*
  No. 11-cv-05188-SI, 2012 WL 5458396 (N.D. Cal. Jun. 14, 2012) ......................................9

*Leu v. Int'l Boundary Comm'n,*
  605 F.3d 693 (9th Cir. 2010) .................................................................................................15

*Lewis v. Casey,*
  518 U.S. 343 (1996) ...............................................................................................................12

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) .................................................................................................................8

*Makah Indian Tribe v. Verity,*
  910 F.2d 555 (9th Cir. 1990) .............................................................................................7, 16

*Martinez v. Clark Cnty., Nev.,*
  846 F. Supp. 2d 1131 (D. Nev. 2012) ....................................................................................15

*McCarthy v. United States,*
  850 F.2d 558 (9th Cir. 1988) ...................................................................................................6

*N.E. Fla. Chap. of Assoc. Gen. Contractors of Am. v. Jacksonville,*
  508 U.S. 656 (1993) ...............................................................................................................13

*Naimi v. Starbucks Corp.,*
  798 F. App'x. 67 (2019) ...........................................................................................................8

*Northrop Corp. v. McDonnell Douglas Corp.,*
  705 F.2d 1030 (9th Cir. 1983) ...............................................................................................14

*Paiute-Shoshone Indians of Bishop Community of Bishop Colony, Cal. v. City of Los Angeles,*
  637 F.3d 993 (9th Cir. 2011) .................................................................................................15

*Pritikin v. Dep't of Energy,*
  254 F.3d 791 (9th Cir. 2001) ...................................................................................................8

*Quileute Indian Tribe v. Babbitt,*
  18 F.3d 1456 (9th Cir. 1994) ...................................................................................................6

**DEFENDANT HISMILE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**
**Case No. 4:24-cv-03626-KAW**

*Raines v. Byrd*,
  521 U.S. 811 (1997)........................................................................................13

*Rattlesnake Coal. v. U.S. EPA*,
  509 F.3d 1095 (9th Cir. 2007) ...........................................................................6

*Shahar v. Hotwire, Inc.*,
  No. C 12-06027 JSW, 2013 WL 12176843 (N.D. Cal. Apr. 15, 2013)....................9, 10, 11

*Simon v. E. Kentucky Welfare Rts. Org.*,
  426 U.S. 26 (1976)..........................................................................................13

*Sloan v. Ameristar Casinos, Inc.*,
  No. 12–cv–01126–MSK–RM 2014 WL 1015818 (D. Colo. Mar. 13, 2014)....................15

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)........................................................................................12

*Sprint Commc'n Co., L .P. v. APCC Servs., Inc.*,
  554 U.S. 269 (2008).........................................................................................8

*Stack v. Progressive Select Ins. Co.*,
  Case No. 20-cv-00338-LB, 2020 WL 5517300 (N.D. Cal. Sept. 14, 2020)...................11

*Stanwood v. Mary Kay, Inc.*,
  941 F. Supp. 2d 1212 (C.D. Cal. 2012) .................................................................9

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009).........................................................................................8

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, &*
*Products Liability Litigation.*,
  826 F. Supp. 2d 1180 (C.D. Cal. 2011) ...............................................................11

*Warren v. Fox Family Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) ............................................................................6

*Weiss v. Perez*,
  602 F. Supp. 3d 1279 (N.D. Cal. 2022) ...............................................................16

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
  472 F. Supp. 3d 649 (N.D. Cal. 2020) .............................................................7, 14

*Wicklund v. Page*,
  No. 09-cv-671, 2010 WL 5572813 (D. Idaho Aug. 6, 2010) ........................................7

*Williams v. Apple, Inc.*,
  449 F. Supp. 3d 892 (N.D. Cal. 2020) .................................................................10

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)...................................................................................1, 6, 8, 17

Fed. R. Civ. P. 12(b)(7)........................................................................1, 6, 7, 14, 15, 17

Fed. R. Civ. P. 15(a)(1)(B) .........................................................................................2, 3, 6

Fed. R. Civ. P. 19 ...............................................................................................................6

Fed. R. Civ. P. 19(a) ..............................................................................................7, 14, 15

Fed. R. Civ. P. 19(b) ....................................................................................................7, 16

**DEFENDANT HISMILE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**
**Case No. 4:24-cv-03626-KAW**

## I.   INTRODUCTION

Plaintiffs sued the wrong defendant and refused to timely fix the problem.  As a consequence, they lack standing to sue the sole defendant they chose to name.  That conscious error deprives the Court of subject-matter jurisdiction and precludes the Court from awarding Plaintiffs the relief that they demand.

Plaintiffs say that they suffered harm because social-media advertisements deceived them, causing them to purchase Hismile products that they otherwise would not have bought.  The alleged deception is the fulcrum of Plaintiffs' Complaint.  The social-media ads, they claim, are what caused their purchase, and thus, their alleged injuries.

Plaintiffs are wrong on the merits, but that is for another day.  At issue now is whether their suit can proceed as pleaded, and it cannot.  Plaintiffs chose to sue Hismile, Inc. ("HI").  But HI had nothing to do with the social-media advertisements at the heart of the Complaint.  Instead, as HI informed Plaintiffs, HI's Australian corporate sibling Hismile Pty. Ltd. ("HPL") was and remains solely responsible for all of the Hismile brand's social-media advertising.  Armed with that information, Plaintiffs inexplicably chose to plow forward on the wrong path.  That choice doubly dooms their Complaint.

***First***, the Court lacks subject-matter jurisdiction because Plaintiffs lack standing.  Article III standing requires an injury that is fairly traceable to—that is, caused by—the defendant's conduct.  By suing the wrong entity, Plaintiffs whiff the causation prong of standing.  HI neither created nor published the advertisements in question, so it could not have caused the injuries that Plaintiffs (wrongly) allege.  Plaintiffs could have fixed that problem by amending the Complaint to name HPL, but they chose not to.  That choice deprives the Court of subject-matter jurisdiction and demands dismissal under Rule 12(b)(1).

***Second***, even if Plaintiffs had standing, their Complaint would remain subject to dismissal under Rule 12(b)(7) because they refused to join a necessary party.  Plaintiffs ask the Court for an injunction changing the Hismile brand's social-media advertising.  But an injunction against HI cannot effect the change that Plaintiffs demand.  Instead, granting that relief would require another order against another party, HPL.  Because Plaintiffs refuse to join HPL, the Court should dismiss their Complaint.

HI recognizes that this Motion should not be necessary.  Had Plaintiffs timely agreed to amend their Complaint to put the proper parties before the Court, HI would not have needed to file this Motion. But instead, Plaintiffs dithered and failed to agree to amend their Complaint in time to prevent HI from

preparing this Motion.  And then, Plaintiffs ultimately said that they would not amend the Complaint unless HI agreed that the amendment would not count as their matter-of-course amendment under Rule 15(a)(1)(B).  Put differently, the only reason that this Motion is necessary is that Plaintiffs want to retain their ability to amend their complaint again, without good cause, sometime down the road.

In the end, Plaintiffs chose to sue the wrong party and then refused to fix that mistake unless HI agreed that Plaintiffs could file yet another without-good-cause amendment sometime in the future.  That choice comes with a consequence:  The Court should dismiss this case for lack of standing or for failure to join a necessary party.

## II.   ISSUES PRESENTED

A.   To establish standing, a plaintiff must allege and then show that the complained-of harm was caused by the named defendant, not a third party.  Plaintiffs sue Hismile Inc. ("HI") for alleged injuries that they say were caused by representations in social-media advertisements.  HI, however, neither created nor published social-media advertisements.  Instead, its sister company did.  Do Plaintiffs have standing to sue HI?

B.   To establish standing to sue over specific conduct, plaintiffs must allege and then show that the conduct complained of caused their injury.  Plaintiffs contend that they were injured by a representation that a Hismile product is "clinically proven."  But undisputable evidence shows that the "clinically proven" representation was not made until after Plaintiffs' purchases.   Do Plaintiffs have standing to sue for the "clinically proven" representation?

C.   A party is necessary when the court cannot accord complete relief in the party's absence.  Here, Hismile Pty. Ltd. ("HPL") was at all times—and remains—responsible for the social-media advertisements at the heart of the Complaint.  An injunction issued against its sister company, HI, would have no effect on HPL's advertising practices.  Is HPL a necessary party?

D.   Courts can dismiss complaints that fail to name necessary parties when it would be inequitable to proceed to litigate the complaint.  Plaintiffs refused to sue HPL, even after being told that it was responsible for the social-media advertisements upon which their

Complaint is based.  Then, they said at the eleventh hour that they would amend their Complaint, but only if HI would agree that the amendment would not count as their amendment as a matter of course under Rule 15(a)(1)(B).  Should the Court dismiss Plaintiffs' Complaint and order them to join HPL as a party?

## III.   FACTUAL BACKGROUND

### A.   Hismile, Inc. is the U.S. affiliate of an Australian company that markets and sells oral cosmetic products.

An Australian company named Hismile Pty Ltd. ("HPL") created the Hismile brand in 2014. (Declaration of Jack Carroll ("Caroll Decl.") ¶ 3.)  The Hismile brand includes a variety of oral care and cosmetic products, including toothpaste to topical concealers that make teeth appear whiter.  Hismile distinguishes itself from more-traditional dental brands by using flavors like "Cereal Milk" and "Gummy Bears," and by posting playful and entertaining videos on social media.

At all times relevant to this case, HPL has controlled and been solely responsible for the Hismile brand's social-media accounts, including its TikTok, Instagram, and Facebook accounts.  (*Id.* ¶ 4.)  In that capacity, HPL creates posts in Australia, or hires (again, in Australia) third-party influencers to create the posts.  (*Id.*)  The Hismile brand's social-media posts are visible worldwide and have followers both within and beyond the United States.  (*Id.*)

Hismile, Inc. ("HI") is HPL's U.S. affiliate.  It was formed in May 2023.  It has never had any role in managing the Hismile brand's social-media accounts or creating posts for those accounts.  (*Id.* ¶ 5.)

HPL is responsible for the Hismile website's content.  Until August 29, 2023, HPL also processed all orders on the Hismile brand's U.S. domain, https://us.hismileteeth.com/ (the "Website").  On that date, HI began processing orders made on the Website.  HPL remained responsible for the Website's content. (Carroll Decl. ¶ 6.)

### B.   Plaintiffs allege that they purchased Hismile products that were deceptively marketed, primarily on social media.

Plaintiffs are two consumers who contend that social-media advertisements spurred them to purchase Hismile products, which they contend did not work as they expected.

**Ledesma:**  Plaintiff Ledesma bought two products through the Website in September 2023:  V34

3

Colour Corrector Serum ("V34") and a PAP+ Whitening Pen.  (Compl. ¶ 10.b.)  He alleges that, in making those purchases, he relied on ads depicting "instant and dramatic [tooth] whitening" that he saw "on HiSmile's Facebook advertisements and on HiSmile's official website."  (*Id.* ¶ 74.a.)[1]  Without specifying which ads he saw, he says that they contained "before-and-after photos and videos in which he saw 'scientists' and 'dentists' demonstrate that the Products could instantly turn teeth white because of the science of colour theory."  (*Id.*)  Ledesma further alleges that he relied on unspecified "influencer endorsements" and the representation that Hismile products are "Clinically Proven."  (*Id.*)

**Tanaka:**  Plaintiff Tanaka alleges two separate transactions.  In the first, she bought the Glostik Tooth Gloss ("Glostik," pronounced "gloss-stick") from the Website in June 2023.  (*Id.* ¶ 11.b.)  In the second, she bought V34 from a Walmart in January 2024.  (*Id.*)  She alleges that she "relied on the depictions and promises of instant and dramatic whitening she saw on HiSmile's Instagram and TikTok advertisements," as well as before-and-after photos and videos, the "Clinically Proven" claim, and "customer reviews and reactions she saw on HiSmile's website and in HiSmile's social media comments."  (*Id.* ¶ 75.a.)

While the Complaint does not identify the advertisements that Plaintiffs relied upon, it contains a smattering of screenshots of Hismile marketing.  Most of the screenshots are from social-media ads.  (*E.g.*, *id.* ¶¶ 23–25 (ads for V34), ¶ 26 (ad for PAP+ Whitening Strips), ¶¶ 48, 57 (ads containing the "Clinically Proven" representation in ads for V34), ¶ 55 (ad describing colour theory).)  The Complaint also contains some undated screenshots purporting to be from the Website.  (*Id.* ¶ 25 (a series of images regarding V34, including one alleged to be from the Website); ¶ 27 (re: Glostik); ¶ 48 (page containing the "Clinically Proven" representation in ads for V34).)

Notably, the Complaint does not allege that either Plaintiff saw any of the over-two-dozen screen-grabbed advertisements or webpages reproduced in the Complaint's pages.  Nor does the Complaint contain any advertisements regarding the PAP+ Whitening Pen.  And although the Complaint includes advertisements regarding the PAP+ Whitening Strips, nothing in the Complaint alleges that any plaintiff ever purchased the strips.

---

[1] The Complaint incorrectly capitalizes the *s* in Hismile throughout.

The Complaint pursues claims under the UCL, FAL, and CLRA, as well as common-law claims for breach of warranty and unjust enrichment/restitution.  Plaintiffs seek both monetary and injunctive relief.  The Complaint asserts claims only against HI, and none against HPL.

**C.      Hismile, Inc. notified Plaintiffs' counsel of deficiencies in their Complaint, but Plaintiffs' counsel refused to remedy them.**

Recognizing that Plaintiffs' claims are premised almost entirely on social-media statements and that they neglected to name HPL—the entity responsible for all social-media content—defense counsel informed Plaintiffs that they had sued the wrong party.  In a July 29, 2024 email, counsel for HI (a) told Plaintiffs that HI could not have caused the injuries alleged in the Complaint because the online marketing was handled by HPL, (b) encouraged them to fix the issue by amending the Complaint to name HPL, and (c) offered to accept service if Plaintiffs did so, which would obviate the need to serve a foreign party. (Declaration of Steven Selna ("Selna Decl.") ¶¶ 4–9, Ex. A at 15 –16 (7/29/2024 Selna email).)

In that communication, defense counsel also informed Plaintiffs of inaccuracies in the Complaint. For instance, while the Complaint alleges that both Plaintiffs relied on the "Clinically Proven" representation, the Website did not make that representation until after both Plaintiffs had made their purchases.  (*Id.* ¶ 8., Ex. A at 15–16.)  Similarly, many of the screenshots of social-media ads in the Complaint depict ads that were not posted until after the Plaintiffs had completed their purchases, so Plaintiffs could not have relied upon them.  (*Id.* ¶ 9, Ex. A at 15–16.)  Defense counsel encouraged Plaintiffs to remove these inaccuracies in an Amended Complaint to avoid misleading the Court.  (*Id.* ¶ 7, Ex. A at 15–16.)  Defendant's counsel requested that Plaintiffs agree by close of business on July 30 to amend their Complaint.  (*Id.*)

Plaintiffs did not meet the July 30 deadline.  Instead on August 1, they sought additional detail, which counsel for HI provided the same day.  (Selna Decl. ¶¶ 11–14, Ex. A at 10–13 (8/1/24 email exchange).)  HI informed Plaintiffs that if they did not agree to amend their Complaint by 5:00 p.m. PDT Monday, August 5, HI would be forced to prepare and file this Motion.  (*Id.* ¶ 15, Ex. A at 11 (8/1/2024 Brooks email).)

Despite HI's good-faith attempts to ensure that the proper parties are before the Court, Plaintiffs refused to agree, by HI's reasonable deadline, that they would amend their Complaint.  (Selna Decl. ¶ 16,

Ex. A at 9–10 (8/5/24 Sodaify email).)  Instead, nearly three full days after that deadline, Plaintiffs offered to amend their Complaint, but only if HI agreed that it would not count as Plaintiffs' amendment as a matter of course under Rule 15(a)(1)(B).  (Selna Decl. ¶ 17, Ex. A at 6–7 (8/8/24 Sodaify email).)  HI again worked in good faith to negotiate an agreement with Plaintiffs, but after the close of business on Friday, August 9, 2024, Plaintiffs reiterated their demand.  (*Id.* ¶ 22, Ex. A at 4 (8/9/24 Sodaify email).)  HI, yet again, extended its deadline, offering Plaintiffs until noon PDT on Monday, August 12, 2024—HI's filing deadline—to agree to amend their Complaint.  (*Id.* ¶¶ 23–26, Ex. A. at 2–3 (8/11/2024 Meuti email).)  And to accommodate Plaintiffs, HI told them that they could set aside the dispute over what the effect of the amendment would be, so that the Court could resolve that dispute on a later date, if it ever became necessary.  (*Id.* ¶ 23, Ex. A. at 2–3 (8/11/2024 Meuti email).)  Plaintiffs did not so agree, necessitating this Motion.  (*Id.* ¶ 27, Ex. A at 1–2 (8/12/2024 Sodaify email).)

## IV.   APPLICABLE LEGAL STANDARDS

### A.   Rule 12(b)(1)

A court may dismiss a complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction.  "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

When a defendant offers extrinsic evidence, the court is not restricted to the pleadings and "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  In that case, "[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."  *Colwell v. Dep't of Health and Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (internal quotation marks and citation omitted).  "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence."  *Rattlesnake Coal. v. U.S. EPA*, 509 F.3d 1095, 1102 n. 1 (9th Cir. 2007).

### B.   Rule 12(b)(7)

Courts dismiss complaints under Rule 12(b)(7) when plaintiffs fail to join a party that is indispensable under Rule 19.  *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1458 (9th Cir. 1994).  Rule

19 "governs compulsory party joinder in federal district courts." *E.E.O.C. v. Peabody W. Coal Co.* ("*Peabody I*"), 400 F.3d 774, 778 (9th Cir. 2005).  When determining whether dismissal is appropriate under Rule 12(b)(7), the court undertakes "three successive inquiries." *Id.* at 779.

**First**, the court must determine whether a party is necessary, and thus should be joined, under Rule 19(a).  Relevant here, "a nonparty is necessary under Rule 19(a)(1)(A) if 'in that person's absence, the court cannot accord complete relief among existing parties.'"  *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 663 (N.D. Cal. 2020), *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021) (quoting Fed. R. Civ. P. 19(a)(1)(A)).

**Second**, if a nonparty is necessary, the court determines "whether it is feasible to order that the absentee be joined." *Peabody I*, 400 F.3d at 779.  Joinder is not feasible "when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." *Id.*

**Third**, if joinder is not feasible, the court must determine whether the party is "indispensable" under Rule 19(b), that is, whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).  "The inquiry is a practical one and fact specific and is designed to avoid the harsh results of rigid application." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (citations omitted).

In answering these questions, courts may properly consider extrinsic evidence.  "Because a claim under 12(b)(7) does not decide the validity of the claim, matters outside the pleadings may be considered without converting the motion to dismiss into a motion for summary judgment." *Wicklund v. Page*, No. 09-cv-671, 2010 WL 5572813, at *4 (D. Idaho Aug. 6, 2010) (citing 5C Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 1366 (3d ed. 2010)); *see also Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 n. 4 (7th Cir. 2001) ("In ruling on a dismissal for lack of joinder of an indispensable party, a court may go outside the pleadings and look to extrinsic evidence."); *Dumann Realty, LLC v. Faust*, 267 F.R.D. 101, n. 1 (S.D.N.Y. 2010).

//

//

//

1    **V.    ARGUMENT**

2        **A.    Plaintiffs lack standing, so the Court lacks jurisdiction and must dismiss under Rule**

3            **12(b)(1).**

4        Article III jurisdiction extends only to cases and controversies, and a case or controversy can exist

5    only if the plaintiff establishes standing.  *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,

6    528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

7        To establish Article III standing, "a plaintiff must adequately establish: (1) an injury in fact (i.e., a

8    concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable

9    connection between the alleged injury in fact and the alleged conduct of the defendant); and

10   (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by

11   the relief plaintiff seeks in bringing suit)."  *Sprint Commc'n Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269,

12   273–74 (2008) (citing *Lujan*, 504 U.S. at 560–561) (internal quotations and alterations omitted).  The

13   party invoking federal jurisdiction bears the burden of establishing these elements, which are the

14   "irreducible constitutional minimum" requirements of standing.  *Lujan,* 504 U.S. at 560–61.  Relatedly,

15   each plaintiff "bears the burden of showing that he has standing for each type of relief sought."  *Summers*

16   *v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

17       The second element—referred to as causation or fair traceability—is at issue here.  Satisfying it

18   requires showing a "causal connection between the injury and the conduct complained of."  *Lujan*, 504

19   U.S. at 560.  Crucially, the injury must be "fairly traceable to the challenged action of the defendant, and

20   not ... the result of the independent action of some third party not before the court."  *Id.* (quoting *Simon v.*

21   *E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)) (internal modifications omitted); *see also*

22   *Pritikin v. Dep't of Energy*, 254 F.3d 791, 798 (9th Cir. 2001) (explaining that the plaintiff lacked standing

23   because the harm alleged was "manifestly the product of the independent action of a third party" (quoting

24   *Duquense Light Co. v. U.S. EPA*, 166 F.3d 609, 613 (3d Cir. 1999))); *Naimi v. Starbucks Corp.*, 798 F.

25   App'x. 67, 70 (2019) (dismissing complaint because it did not allege, *inter alia*, "whether Starbucks (as

26   opposed to a third-party distributor) was responsible for any overpayment.").[2]

27   _____

28       [2] Circuit courts across the country are in accord. *Duquesne Light Co. v. U.S. EPA*, 166 F.3d 609 (3d

Courts dismiss claims for lack of standing when plaintiffs fail to allege a causal chain between the defendant's alleged misconduct and the plaintiff's injury. For example, courts commonly dismiss claims as to products that the plaintiff did not purchase, especially when other items were not advertised similarly.[3] Similarly, courts frequently strike claims based on channels where the plaintiffs never shopped, because the plaintiffs have not been injured by those channels. *Stanwood v. Mary Kay, Inc*., 941 F. Supp. 2d 1212, 1218 (C.D. Cal. 2012) (dismissing claims as to Mary Kay website and the PETA and Coalition lists because "[Plaintiff] has not alleged that she viewed any of those sources, and therefore cannot link her injuries to those misrepresentations."); *Shahar v. Hotwire, Inc.*, No. C 12-06027 JSW, 2013 WL 12176843, at *4 (N.D. Cal. Apr. 15, 2013) (dismissing claims as to Expedia.com, a website operated by the defendant, because the plaintiff did not allege any injury stemming from that website).

### 1. To establish standing, Plaintiffs must each identify conduct by HI that caused their alleged injuries.

Here, Plaintiffs' alleged injury is spending money they would not have spent but for certain representations on Hismile's social-media accounts and website.[4] In cases like this, where "the plaintiffs

---

Cir. 1999); *Fulani v. Brady*, 935 F.2d 1324, 1331 (D.C. Cir. 1991) (no traceability where complained-of conduct caused injury "only due to other intervening causal factors," including third-party conduct); *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1225 (10th Cir. 2008) (no traceability where an "indispensable act by a third party not before the court" interrupted the chain "[b]etween the actions of the defendants" and the events leading to plaintiffs' claims); *Alston v. Advanced Brands & Importing Co.*, 494 F.3d 562, 565 (6th Cir. 2007) (no traceability where the "causal connection" between the defendants' acts and the plaintiffs' alleged injuries was "broken by the intervening criminal acts" of third parties). *See also Ariz. Contrs. Ass'n v. Napolitano*, 526 F. Supp. 2d 968, 983 (D. Ariz. 2007) (dismissing action because plaintiffs could not show that injury was traceable to the actions of defendant but only to third party not named in suit).

[3] *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-SI, 2012 WL 5458396, **4-5 (N.D. Cal. Jun. 14, 2012) (holding that a plaintiff challenging the labeling of a product he did not purchase "cannot establish a legally cognizable injury under Article III"); *Chaplin v. Walmart, Inc.*, No. 3:23-CV-00878-WHO, 2023 WL 4843956, at *4 (N.D. Cal. May 25, 2023) (dismissing claims as to online purchases because plaintiff never shopped online); *Granfield v. NVIDIA Corp.,* No. 11–cv–5403–JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing.").

[4] *E.g.*, Compl. ¶ 95 (alleging injury "as a result of and in reliance upon HiSmile's misleading advertising claims"); ¶ 103 ("HiSmile's action of misrepresenting the Products with the Fraudulent Misrepresentations … so causes injuries to consumers"); *id.* ("injuries caused by HiSmile's deceptive

---

9

assert that their injury is the result of deceptive misrepresentations or omissions," "[a]ctual reliance is required to demonstrate causation for purposes of Article III standing." *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 904, 912 (N.D. Cal. 2020).

As shown below, Plaintiffs cannot clear this hurdle.  They do not claim that they relied on a single statement made by HI—and thus, they do not allege facts suggesting that HI could have caused their alleged purchases.  Although the Complaint includes screenshots to a kitchen sink's worth of advertisements, made on different platforms, the Carroll Declaration makes clear that these statements were all either (a) made by a separate entity (HPL), and/or (b) made *after* Plaintiffs' purchases.  (Carroll Decl. ¶¶ 4–7, 9.)  Plaintiffs therefore cannot establish a causal link between HI and any alleged harm caused by these advertisements and lack standing to sue HI for them.

### 2.    Plaintiffs' alleged injuries from social-media ads are not fairly traceable to HI.

The crux of Plaintiffs' case is that HI uses social media to trick customers into making purchases.  (*See, e.g.*, Compl. ¶ 2 ("HiSmile has engaged in an aggressive, pervasive, and fraudulent social media marketing scheme"); ¶¶ 17–20 ("HiSmile credits its explosive success to its aggressive social media marketing."); ¶ 69 ("Plaintiffs relied on HiSmile's social media advertising and online Product reviews when they decided to purchase the Products.")).  The problem for Plaintiffs, however, is that HI is not— and has never been—responsible for advertisements on the Hismile brand's social-media channels.  HI therefore could not have caused those alleged injuries, and Plaintiffs lack standing to sue HI for these posts.

*Gentges v. Trend Micro* is instructive.  No. C 11-5574 SBA, 2012 WL 2792442 (N.D. Cal. July 9, 2012).  There, plaintiffs alleged that defendant Trend Micro—which sold computer security and anti-virus software online—failed to disclose to consumers that its software subscriptions would automatically renew.  *Id.*at *1.  That omission, plaintiffs claimed, violated the UCL and CLRA.  But a different entity, Digital River, sold the Trend Micro products, controlled the website, and set the terms and conditions of

---

advertising"); ¶¶ 111, 119, 127 ("Plaintiffs … would not have purchased the Products … if they had known that the Products' advertising and labeling were deceptive"); ¶ 119 ("Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of HiSmile's fraudulent conduct.")

the online sales, even though those sales occurred at trendmicro.com.  Indeed, only Digital River—and not the defendant—"engaged in the disputed transactions with Plaintiffs." *Id.* at \*5.  The defendant had a "complete lack of involvement in the transactions." *Id.*  For that reason, the defendant did not "cause" plaintiff's alleged injury, and the harm was not "fairly traceable" to it. *Id.* at \*5.  And so the court dismissed the claim on standing grounds.

The same analysis applies even when the defendant resides under the same corporate umbrella as the company responsible for the conduct of which plaintiffs complain.  For example, in *Cattie v. Walmart Stores*, a plaintiff sued both Wal-Mart Stores, Inc. and its related online entity, WalMart.com, for alleged UCL and CLRA violations based on sales of bed linens.  504 F. Supp. 2d 939 (S.D. Cal. 2007).  As in *Trend Micro*, the Court held that plaintiff failed to establish standing against one defendant because the complaint did "not adequately allege Wal-Mart Stores had anything to do with the wrongdoing complained of." *Id.* at 945.  Only WalMart.com sold the linens.  And a mere "general business relationship" between the Wal-Mart entities failed to establish standing against Wal-Mart Stores. *Id.*  So the plaintiff had "not adequately shown her injury is traceable to the actions of Wal-Mart Stores," and the court again dismissed the claim on standing grounds. *Id.*  So too in *Stack v. Progressive Select Ins. Co.* did a district court conclude that plaintiff lacked standing to sue corporate entities related to the primary defendant, when those corporate relatives were not involved in the alleged misconduct.  There, a plaintiff sued United Insurance and several affiliates.  But only "United wrote the policy" at issue.  Case No. 20-cv-00338-LB, 2020 WL 5517300, at \*7 (N.D. Cal. Sept. 14, 2020).  Although the defendants were all related "affiliates," they "did not issue the policy or participate in the claim adjudication." *Id.*  The Court dismissed the affiliates because the harm alleged was not fairly traceable to them.

Similarly, in *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, & Products Liability Litigation.*, 826 F. Supp. 2d 1180, 1192 (C.D. Cal. 2011), the court dismissed international plaintiffs' claims against the Toyota entity responsible for U.S. marketing, because the plaintiffs failed to explain how that entity impacted their buying decision. *Id.* (dismissing claim for lack of Article III standing, because "the SAC is devoid of allegations linking TMS's advertising and marketing efforts in the U.S. with Plaintiffs in other countries.").

//

These cases stand for a straightforward commonsense principle: A plaintiff can "fairly trace" his injury only to defendants who engaged in the alleged conduct.  Defendants with no connection to the conduct of other entities did not "cause" the harm, so Article III of the Constitution does not authorize suits against them.  This rule applies even when the defendants are corporate affiliates.  And Plaintiffs here offer no reason to deviate from this well-worth path.  HI did not produce, create, or participate in the dissemination of the social-media advertisements that allegedly caused harm here.  Plaintiffs do not (and cannot) say otherwise.  And that alone dooms Plaintiffs' case.  Because HI played no role in causing any alleged injury here, Plaintiffs' claims are not "fairly traceable" to HI, and Plaintiffs lack standing.  The claims must be dismissed.

### 3. *Plaintiffs could not have suffered injury from either of the statements that they allege appeared on the Website.*

The Complaint identifies only two statements from the Website—neither of which Plaintiffs specifically claim to have seen or relied on.  Neither could have caused their alleged injuries.

**"Clinically Proven."**  First, Plaintiffs claim to have relied on statements that V34 is "Clinically Proven," (¶¶ 74.a.,75.a.), and that this statement is on the Website (¶ 48).  To be clear, Plaintiffs never expressly allege that they saw this statement on the Website—nor could they.  The Carroll Declaration makes clear that the "Clinically Proven" claim could not have caused Plaintiffs to make their purchases because it was not added to the Website until February 2024—after all of the purchases alleged in the Complaint.  (¶¶ 10.b., 11.b; Carroll Decl. ¶ 9.)  Plaintiffs therefore lack standing to sue HI (or anyone else) for this statement, because it could not have caused their injury.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) ("A 'concrete' injury must be 'de facto'; that is, it must actually exist."); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class." (internal quotations omitted)).

**Glostik's Product Page.**  The Complaint also includes a screenshot of the Glostik product page on the Website.  (Compl. ¶ 27.)  The Complaint says that the relevant URL was last visited on June 14, 2024, but does not specify when this screenshot was taken; nor does the Complaint allege that either plaintiff ever saw it.  Regardless, the only alleged purchase of Glostik took place in June 2023, when HPL

controlled the website.[5] (Compl. ¶ 11.b.; Carroll Decl. ¶¶ 6, 7.) Thus, HI could not have caused any injury stemming from this screenshot (even if either Plaintiff saw it).

Again, HI informed Plaintiffs' lawyers of these inaccuracies in the Complaint and invited them to fix them, to avoid misleading the Court. (Selna Decl. ¶ 4–7, Ex. A. at 15–16 (7/29/2024 Selna email).) Plaintiffs have thus far refused to do so.

### 4. *Plaintiffs lack standing to sue over products they never purchased.*

Similarly, Plaintiffs never allege that they purchased whitening strips, and thus they lack standing to assert claims about Hismile's marketing for whitening strips. The Complaint invokes social-media advertisements for the whitening strips (Compl. ¶ 26 (ad for PAP+ Whitening Strips)), but nowhere does the Complaint allege that plaintiffs actually purchased these products. Indeed, Plaintiffs expressly state that the Whitening Strips were an "Unpurchased Product." *Id.* ¶ 76. Thus, no party—not HI, not HPL— could have caused any injury from this advertisement.

### B. Plaintiffs failed to join a necessary party, even after being told that they needed to do so.

Plaintiffs seek not only monetary relief in the form of damages, restitution, and disgorgement, but also injunctive relief that would change Hismile advertising and marketing practices. (Compl. ¶ 166.c. & d.) Even after being told that HI—the only defendant they sued—is not responsible for the social-media advertising and marketing practices at the center of the Complaint, Plaintiffs refused to amend their Complaint to join a necessary party: HPL, the party responsible for the advertising and marketing about

---

[5] Even if Plaintiffs could assert a claim against the company from whom they bought the product, Tanaka would still lack standing to sue HI for her June 23, 2023 purchase, because she made that purchase from HPL, before HI had any involvement in the Website. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (where a plaintiff sues the wrong defendant, that plaintiff does not have Article III standing); *accord Agrocomplect, AD v. Republic of Iraq*, 524 F. Supp. 2d 16, 30 (D.D.C. 2007); *see also N.E. Fla. Chap. of Assoc. Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 663 (1993) (plaintiff must demonstrate alleged injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court"); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976) (same); *Chamber of Comm. of the U.S. v. Edmondson*, 594 F.3d 742, 773 (10th Cir. 2010) ("We have previously held that a plaintiff lacked standing to bring a claim because the wrong defendant was selected.") (Hartz, C.J., concurring and dissenting) (citing *Nova Health Systems v. Gandy*, 416 F.3d. 1149, 1154 (10th Cir. 2005)).

1  which Plaintiffs complain.  (Selna Decl. ¶¶ 5–13; Carroll Decl. ¶¶ 4–6.)  Or at least they refused to do so

2  unless HI agreed that they could amend again as a matter of course after HI and HPL responded to the

3  Amended Complaint.  As a result of Plaintiffs' own inexplicable choices, their Complaint must be

4  dismissed under Rule 12(b)(7).

5            ***1.***        ***HPL is a necessary party under Rule 19(a).***

6         Under Rule 19(a)(1)(A), a party is "necessary" if the Court cannot accord complete relief in that

7  party's absence.  *See* Fed. R. Civ. P. 19(a)(1)(A)-(B); *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F.

8  Supp. 3d 649, 663 (N.D. Cal. 2020), *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021).  "This factor is

9  concerned with consummate rather than partial or hollow relief as to those already parties, and with

10  precluding multiple lawsuits on the same cause of action."  *Northrop Corp. v. McDonnell Douglas Corp.*,

11  705 F.2d 1030, 1043 (9th Cir. 1983) (citing Advisory Committee's Note, 39 F.R.D. 89, 91 (1966)).  Put

12  differently, the key question is whether the nonparty's absence would preclude the court from fashioning

13  meaningful relief between the current parties.  *Id.* at 1044.

14         Here, HPL is a necessary party because the Court cannot grant meaningful relief in its absence.

15  That is so because if the Court were to grant the injunction that Plaintiffs seek—an injunction requiring

16  changes in marketing practices of the Hismile brand—the injunction "would bind only the defendant, not"

17  HPL, the party responsible for Hismile marketing.  *See Dawavendewa v. Salt River Project Agric.*

18  *Improvement Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002).  Thus, even if the Court granted Plaintiffs the

19  precise injunction they seek, Hismile marketing would not change, and Plaintiffs would not receive the

20  relief that they sought.

21         *Dawevendewa* is instructive.  There, the plaintiff sued the defendant, challenging its preference for

22  hiring members of the Navajo Nation and seeking an injunction to end that preference.  *Id.* at 1153–54.

23  The defendant's relevant facility was located on land leased from the Navajo Nation, and the lease

24  included a provision requiring the defendant to implement the challenged hiring preference.  *Id.* at 1153.

25  The Ninth Circuit held that the Navajo Nation was a necessary party, because the injunction that the

26  plaintiff sought would be ineffectual if entered against the defendant only.  *Id.* at 1155.  The same is true

27  here.  As outlined above, the injunction that Plaintiffs request would not effect the change that they seek

28  unless it is entered against HPL, the party that they refused to sue.

*Paiute-Shoshone Indians of Bishop Community of Bishop Colony, Cal. v. City of Los Angeles* underscores that HPL is a necessary party here.  There, the Ninth Circuit held that the United States was a necessary party under Rule 19(a), because "[t]o achieve the relief that it seeks, Plaintiff would require an additional order" requiring action from the United States.  637 F.3d 993, 998 (9th Cir. 2011).  That additional order, of course, could not issue if the United States was not a party.  *Id.* ("before a court could bind the United States by such an order, the United States must be a party"); *see also Leu v. Int'l Boundary Comm'n*, 605 F.3d 693, 695 (9th Cir. 2010) ("a person who is not a party to an action is not bound by the judgment in that action").  So it is here.  If the Court were to enter an injunction against HI (the only defendant Plaintiffs sued), Plaintiffs would not obtain the relief the Complaint seeks.  *See Cal. Dump Truck Owners Ass'n v. Nichols*, 924 F. Supp. 2d 1126, 1147 (E.D. Cal. 2012), *aff'd*, 778 F.3d 1119 (9th Cir. 2015), *withdrawn from bound volume, and aff'd*, 784 F.3d 500 (9th Cir. 2015) (concluding that EPA was a necessary party because "even if Plaintiff succeeds in its preemption challenge to the [r]egulation, the relief that Plaintiff seeks will still depend on independent decisions by the EPA").  Instead, an additional order would be necessary—one against HPL.  And to obtain that additional order, HPL "must be a party." *Paiute-Shoshone*, 637 F.3d at 998.[6]

### 2.  *Plaintiffs refuse to join HPL and refuse to explain why.*

The next question under Rule 12(b)(7) is whether joining the absent, but necessary, party is feasible.  "Joinder is feasible if the person is subject to service of process and his joinder will not deprive the Court of subject matter jurisdiction." *Martinez v. Clark Cnty., Nev.*, 846 F. Supp. 2d 1131, 1147 (D. Nev. 2012).

Here, joinder would be feasible but for Plaintiffs' intransigence.  HI would, if it could, replace itself with HPL, but only the Court or Plaintiffs may do so.  *See Sloan v. Ameristar Casinos, Inc.*, No. 12–cv–01126–MSK–RM, 2014 WL 1015818, at *1 (D. Colo. Mar. 13, 2014) (rejecting request that defendant

---

[6] This point also reflects Plaintiffs' lack of standing, because their claims are not redressable unless HPL is named as defendant.  "As the Ninth Circuit explained, there can be no redress[a]bility where the plaintiff's 'prospective benefits depend on an independent actor who retains broad and legitimate discretion the courts cannot presume either to control or to predict.'" *Cal. Dump Truck Owners Ass'n*, 924 F. Supp. 2d at 1146–47 (quoting *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) (further internal quotations and citation omitted)).

add another indispensable defendant because "[t]here is no authority for a defendant to add another party

as a defendant.").  HPL is subject to service of process in Australia, and HI knows of no reason that joining

HPL would undermine the Court of subject-matter jurisdiction.  Instead, as explained above, joining HPL

is necessary to *confer* standing and thus subject-matter jurisdiction.  Yet Plaintiffs persist in refusing to

amend their Complaint to join HPL and to name it as a defendant—at least not unless HI agrees to grant

them an undue procedural advantage, the right to amend again without good cause.

Put differently, joinder would be feasible, but it will require an act of the Court requiring Plaintiffs

to do what they should have done weeks ago:  Name HPL, the party that created and published the ads at

the heart of their Complaint.

> ### 3.      HPL is indispensable, so the Court should dismiss the case if Plaintiffs refuse to join HPL.

The final question is whether "in equity and good conscience, the action should proceed among

the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  Courts balance various factors to

answer this question, including:

- The extent to which a judgment rendered in the absence of the missing party might prejudice either the parties or the absentee;

- The extent to which that prejudice could be avoided;

- Whether a judgment rendered in the missing party's absence would be adequate; and

- Whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b); *Weiss v. Perez*, 602 F. Supp. 3d 1279, 1296–98 (N.D. Cal. 2022).

Here, these factors all favor dismissal.  As noted above, a judgment rendered in HPL's absence

could not provide complete relief, risking prejudice to Plaintiffs.  Relatedly, entering a judgment against

HI for claims anchored upon advertisements that HPL created and published would be unjust, prejudicing

HI, as well.  That prejudice cannot be avoided without joining HPL as a defendant.  And as to the adequate-

remedy factor, Plaintiffs have an adequate remedy available to them now:  Amend the Complaint to name

HPL as a defendant.

Ultimately, this "inquiry is a practical one," *Makah Indian Tribe*, 910 F.2d at 558 (citations

omitted), and the practical answer here is not complicated.  Plaintiffs chose repeatedly to leave HPL out

16

of the case, even after being told that they needed to add HPL as a defendant. In that circumstance, the case cannot proceed in equity and good conscience under the current Complaint. The Court should dismiss the Complaint with prejudice. But if it chooses to dismiss without prejudice, it should offer Plaintiffs only a short period of time in which to file an Amended Complaint joining HPL as a defendant.

## VI.    CONCLUSION

For the reasons outlined above, the Court should dismiss the Complaint. By suing a defendant that neither created nor published the advertisements that Plaintiffs contend harmed them, Plaintiffs have failed to confer upon themselves standing sufficient to invoke this Court's subject-matter jurisdiction. That demands dismissing under Rule 12(b)(1).

Even if Plaintiffs had standing, the Court should dismiss their Complaint under Rule 12(b)(7), because they have failed to join a necessary party. The Court cannot grant Plaintiffs the injunctive relief that they demand unless and until they join HPL as a party. Because Plaintiffs refuse to join HPL, the Court should dismiss their Complaint.

Finally, as outlined above, this Motion is necessary only because Plaintiffs refused to amend unless HI agreed that they could have another "freebie" amendment. In other words, Plaintiffs were so concerned that they will not be able to show good cause for some hypothetical amendment at some indeterminate future time that they forced HI to file this Motion. That choice justifies either (a) a with-prejudice dismissal or (b) an order that if Plaintiffs choose to oppose this Motion and proceed against HI only, they will not be permitted to add HPL as a defendant in the future.

Dated:  August 12, 2024                          Respectfully submitted,


                                                 *s/ Meegan B. Brooks*
                                                 STEVEN M. SELNA (CA 133409)
                                                 MEEGAN B. BROOKS (CA 298570)
                                                 MICHAEL D. MEUTI (CA 227939)
                                                 Benesch, Friedlander, Coplan & Aronoff LLP

                                                 Attorneys for Defendant Hismile, Inc.

**DEFENDANT HISMILE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**
**Case No. 4:24-cv-03626-KAW**