1

**CLARKSON LAW FIRM, P.C.**
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Benjamin J. Fuchs (SBN 320793)
*bfuchs@clarksonlawfirm.com*
Meg Berkowitz (SBN 352358)
*mberkowitz@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

2

3

4

5

6

7

8

9

10

## UNITED STATES DISTRICT COURT

11

## NORTHERN DISTRICT OF CALIFORNIA

12

13

14

15

ALEXANDER LEDESMA, HELEN TANAKA,
LARRY JONES, and CHRISTOPHER DEUEL
individually and on behalf of all others similarly
situated,

Plaintiffs,

16

vs.

17

HISMILE, INC. and HISMILE PTY LTD.,

18

Defendants.

19

20

Case No.: 4:24-cv-03626-KAW

Complaint Filed: June 14, 2024
FAC Filed: September 3, 2024

*Magistrate Judge Kandis A. Westmore*

**PLAINTIFFS' OPPOSITION TO
DEFENDANT HISMILE PTY LTD.'S
MOTION TO DISMISS FIRST AMENDED
COMPLAINT**

Hearing Information:
Date:        May 1, 2025
Time:        1:30 p.m.
Location:    TBD

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**TABLE OF CONTENTS**

Page No.

STATEMENT OF ISSUES TO BE DECIDED ............................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.     INTRODUCTION .............................................................................................. 1

II.    FACTS ............................................................................................................... 2

       A.     Hismile's Products Do Not Dramatically or Instantly Whiten Teeth ......................... 2

       B.     Defendants' Claims of Instant and Dramatic Tooth-Whitening are Material to
              Reasonable Consumers .................................................................... 3

       C.     Plaintiffs Relied on Defendants' Deceptive Claims of Instant and Dramatic Teeth-
              Whitening When Purchasing the Products .......................................... 4

III.   LEGAL STANDARD ........................................................................................ 5

IV.    ARGUMENT ..................................................................................................... 5

       A.     Plaintiffs Have Adequately Pled Defendants' Statutory and Common Law
              Violations .......................................................................................... 5

              1.     Plaintiffs Adequately Identified the False Claims Upon Which They Relied  6

              2.     Plaintiffs' Allegations are Supported by Peer-Reviewed Scientific Studies,
                     Consumer Reviews, and Other Reliable Sources. ............................ 9

              3.     Defendants' False Advertising Deceived Reasonable Consumers ............... 11

              4.     Plaintiffs Adequately Pled Defendants' Violations of the FAL, CLRA, and
                     UCL. ............................................................................ 16

              5.     Plaintiffs Have Adequately Pled Unjust Enrichment and Breach of
                     Warranty ...................................................................... 17

                     a.     Plaintiffs' Unjust Enrichment Claim Is Pled with Particularity ........ 17

                     b.     Plaintiffs' Warranty Claims are Adequately Pled .............................. 18

       B.     Plaintiffs Provided Defendants Sufficient Notice of Their Claims ............................ 19

V.     CONCLUSION ................................................................................................ 21

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

## TABLE OF AUTHORITIES

2

**<u>Cases</u>**                                                                                                    <u>Page No.</u>

3

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) ............................................................................... 20

4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 5, 6, 19

5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................... 5

6

*Benipayo v. Volkswagen Grp. of Am., Inc.*,
   Case No. 15-md-02672-CRB,
   2020 WL 553884 (N.D. Cal. Feb. 4, 2020) ................................................... 20

7

8

*Bias v. Wells Fargo & Co.*,
   942 F. Supp. 2d 915 (N.D. Cal. 2013) ........................................................ 18

9

*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) ....................................................................... 5, 6

10

11

*Camacho v. Auto Club of Southern California*,
   142 Cal. App. 4th 1394 (2006) ................................................................... 17

12

*Chavez v. Blue Sky Nat. Beverage Co.*,
   340 F. App'x 359 (9th Cir. 2009) .......................................................7, 11, 14

13

14

*Colgan v. Leatherman Tool Grp., Inc.*,
   135 Cal. App. 4th 663 (2006) ..................................................................... 17

15

*Donohue v. Apple, Inc.*,
   871 F. Supp. 2d 913 (N.D. Cal. 2012) ........................................................ 20

16

17

*Gutierrez v. Johnson & Johnson Consumer, Inc.*
   Case No. 19-CV-1345 TWR (AGS),
   2021 WL 822721 (S.D. Cal. Jan. 22, 2021) .................................................. 8

18

19

*Hendrick v. BSH Home Appliances Corp.*,
   Case No. 5:23-cv-01496-JWH-JDE,
   2024 WL 2190984 (C.D. Cal. May 14, 2024) .............................................. 11

20

21

*In re Clorox Consumer Litigation*,
   894 F. Supp. 2d 1224 (N.D. Cal. 2012) ...................................................... 18

22

23

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................. 5, 6, 19

24

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ...................................................................... 11

25

26

*Morongo Band of Mission Indians v. Rose*,
   893 F.2d 1074 (9th Cir. 1990) .................................................................... 21

27

28

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*Nacarino v. KSF Acquisitions Corp*.,
  642 F. Supp. 3d 1074 (N.D. Cal. 2022) ........................................................................ 20

*Nguyen v. Lotus by Johnny Dung Inc*.,
  Case No. SACV 17-1317 JVS (JDEx),
  2019 WL 1957962 (C.D. Cal. Jan. 7, 2019) .................................................................. 13

*Rael v. New York & Co., Inc*.,
  Case No. 16-CV-369-BAS(JMA),
  2016 WL 7655247 (S.D. Cal. Dec. 28, 2016) .................................................................. 9

*Sanders v. Apple Inc*.,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) .......................................................................... 18

*Saunders v. Superior Cour*t,
  27 Cal. App. 4th 832 (1994) .......................................................................................... 17

*Sue Shin v. Sanyo Foods Corp. of Am*.,
  Case No. 2:23-cv-10485-SVW-MRW,
  2024 WL 4467603 (C.D. Cal. Aug. 13, 2024) .............................................................. 18

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ........................................................................................... 8

*Taylor v. Nike, Inc*.,
  Case No. 3:16-CV-00661-MO,
  2017 WL 663056 (D. Or. Feb. 17, 2017) ........................................................................ 9

*Vasic v. Patent Health, LLC*,
  Case No. 13cv849 AJB (MDD),
  2014 WL 940323 (S.D. Cal. Mar. 10, 2014) .................................................................. 11

*Williams v. Gerber Prods*.,
  552 F.3d 934 (9th Cir. 2008) ................................................................................ 5, 16, 17

*Yumul v. Smart Balance, Inc.*,
  733 F. Supp. 2d 1117 (C.D. Cal. 2010) ......................................................................... 17

*Zapata Fonseca v. Goya Foods Inc*.,
  Case No. 16-CV-02559-LHK,
  2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ................................................................ 18

**State Statutes**

Cal. Comm. Code § 2607(3)(A) ......................................................................................... 20

**Other Authorities**

Lena Katharina Müller-Heupt et al.,
  *Effectiveness and Safety of Over-the-Counter Tooth-Whitening Agents Compared to Hydrogen Peroxide in Vitro*, INT J MOL SCI. 24(3):1956, (Jan. 19, 2023),
  https://doi.org/10.3390/ijms24031956 ............................................................................. 6

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF ISSUES TO BE DECIDED**

Pursuant to the United States District Court for the Northern District of California, Local Rule 7-4(a)(3), Plaintiffs ask the Court to rule on the following issues:

I.     Whether this Court should deny Hismile Pty Ltd.'s Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have alleged sufficiently plausible, detailed facts in their First Amended Complaint to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

II.     Whether Plaintiffs provided Hismile with adequate notice of their California Consumers Legal Remedies Act ("CLRA") and warranty claims through Plaintiffs' February 16, 2024 statutory notice letter to Hismile.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Defendants Hismile, Inc. and Hismile Pty Ltd. ("Hismile" or "Defendants") have built a purported billion-dollar empire by selling products they claim deliver instant, dramatic teeth whitening. Their rapid rise is fueled by a viral marketing campaign driven by celebrity endorsements, misleading science, and outright falsehoods. Hismile even boldly advertises its products as "clinically proven" to whiten teeth instantly, yet the Products have never undergone clinical testing.

With tens of millions reportedly spent annually on marketing, it is no surprise that Hismile clings to its carefully crafted narrative as Plaintiffs expose the truth behind its advertising claims. While Hismile's advertisements captivate consumers, the science is clear: Hismile's products cannot deliver on their promises because they do not contain any ingredients capable of whitening teeth in a matter of minutes. Plaintiffs' First Amended Complaint, backed by well-pled allegations, peer-reviewed studies, and independent sources, decisively demonstrates this, meeting the Rule 9(b) standard. Hismile's other arguments fare no better: Plaintiffs provided sufficient notice of their CLRA and warranty claims in their February 16, 2024 letter, as well as through subsequent communications with Hismile. Hismile's challenge to unjust enrichment is also meritless, as it is a valid standalone claim, and any choice-of-law argument is premature at the motion-to-dismiss stage.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1     The Court should thus deny Hismile Pty Ltd.'s motion to dismiss in its entirety.

## II.    <u>FACTS</u>

### A.    Hismile's Products Do Not Dramatically or Instantly Whiten Teeth

This case centers on Defendants' pervasive, multi-platform campaign of false advertising, where they affirmatively and repeatedly claim their Products deliver instant and dramatic teeth whitening.[1] ECF 18, *passim*. Defendants reportedly invest tens of millions annually in promoting their Products through fabricated before-and-after images (*id.* ¶¶ 2, 28-34), paid celebrity endorsements (*id.* ¶¶ 2, 17, 52-55), fake "customer reviews" (*id.* ¶¶ 2, 39-45), and staged experiments featuring Hismile-employed actors masquerading as scientists and dental professionals (*id.* ¶¶ 60-66). These deceptive tactics are aggressively amplified via Hismile's meticulously cultivated social media presence, boasting over 8 million followers (*id.* ¶¶ 23-26).[2]

Through these marketing efforts, Hismile and its celebrity agents tell consumers that they, too, can instantly and dramatically whiten their teeth by purchasing and using Hismile Products. For example, Hismile has published multiple videos through its social media channels promoting its V34 Colour Corrector Serum as "clinically proven" to "instantly whiten your teeth" (ECF 18 ¶ 56) using "color correction technology" and other pseudoscientific explanations (*id.* ¶ 60-61). Hismile further misleads consumers into buying its PAP+ Pen through videos in which Hismile temporarily stains models' teeth before it instantly and dramatically "whitens" their teeth by applying this Hismile product. *Id.* ¶ 33.

The entire marketing campaign is a charade, as ***Hismile's Products neither instantly nor dramatically whiten teeth*** (*see* ECF 18 ¶¶ 67-76)—a reality confirmed by advertising watchdogs

---

[1] The "Products" are all varieties and sizes of the following sold throughout California and the rest of the United States: (1) V34 Colour Corrector Serum; (2) Glostik Tooth Gloss; (3) PAP+ Whitening Strips; and (4) PAP+ Whitening Pen. ECF 18 ¶ 7.

[2] Hismile's "Fraudulent Misrepresentations" consist of fake "before and after" images and videos; the use of deceptive filming and editing techniques; the posting of fake positive reviews and removal of critical negative reviews; the use of Hismile employees falsely posing as dental professionals, scientists, and customers in social media advertisements; the use of misleading celebrity endorsements; claims that certain Products are "clinically proven" to instantly whiten teeth; and references to pseudoscientific claims including the "science" of "color theory," "color correction technology," "light interference technology," and "reflective pigments." ECF 18 ¶¶ 27-34, 39-66.

on both sides of the Atlantic (*id*. ¶¶ 77-84, reflecting condemnations of Hismile's misleading marketing claims by the United Kingdom's Advertising Standards Authority and the United States' National Advertising Division). Indeed, none of the Products even contain peroxide-based whitening agents–the standard ingredient of legitimate at-home tooth whitening products—products that typically require repeated applications spanning several days or longer to prove effective. *Id*. ¶¶ 68-70. And only two of these Products—Hismile's PAP+ Whitening Strips and PAP+ Pen—contain a peroxide alternative (in phthalimidoperoxycaproic acid ("PAP")) with whitening attributes. *Id*. ¶¶ 71-72. However, PAP whitening agents are significantly less effective at whitening teeth than even peroxide-based whitening agents—and are proven incapable of dramatically whitening teeth instantly, as Hismile claims through its Fraudulent Misrepresentations. *Id*. ¶ 75.

**B.     Defendants' Claims of Instant and Dramatic Tooth-Whitening are Material to Reasonable Consumers**

The American public is inundated with images of flawless white smiles flaunted by celebrities and influencers on traditional and social media, driving unprecedented demand for at-home tooth-whitening products. ECF 18 ¶ 20.

Most at-home whitening methods rely on hydrogen peroxide or carbamide peroxide to oxidize staining molecules called chromophores, typically requiring multiple applications over weeks to achieve noticeable results. ECF 18 ¶¶ 21-22. However, these treatments often cause significant tooth and gum sensitivity, leaving consumers frustrated with the discomfort and prolonged commitment. *Id*. ¶ 22.

Hismile is among the purveyors of the promise of perfect, "pearlescent" smiles. *See*, *e.g.*, ECF 18 ¶ 43 (promoting Glostick Tooth Gloss Product's "instant brightening" effects). The company sells consumers on this myth through ads published to millions of social media followers that misrepresent the Product's tooth-whitening efficacy through deceptive before-and-after images, false "clinically proven" claims, liberal references to baseless pseudoscientific explanations, and misleading celebrity endorsements. *Id*. ¶ 86. Hismile also furthers this campaign through planted reviews falsely represented as "customer reviews" throughout its Product listings. *Id*. Hismile's deceptive marketing campaign has proven wildly successful, as evidenced by its surging sales—

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Hismile founder Nik Mirkovic declared in 2023 that the company, founded in 2014 with $20,000 in starting capital, was on pace to surpass $1 billion in Product sales that financial year (*id*. ¶ 23)—which Hismile credits in large part to social media promotions, including paid endorsements by celebrities like Kylie Jenner (*id*. ¶ 26).

These promises of instant, dramatic at-home whitening without the drawbacks of traditional methods strongly resonate with consumers seeking faster, gentler tooth-whitening solutions. ECF 18 ¶¶ 21-22. For example, Hismile in some of its ads featuring "before-and-after" image and video comparisons uses a brown solution to pose models' teeth as stained to exaggerate the whitening effects of its Products, leading reasonable consumers seeking to whiten their teeth to believe they, too, can achieve such results by buying and using Hismile Products. *Id*. ¶¶ 29-30. Another technique Hismile deploys to lie to consumers through its myriad "before-and-after" visual misrepresentations is by capturing the "after" images while, for example, the V34 Colour Corrector Serum Product is still on Hismile's campaign models' teeth, creating an appearance of lasting whiteness when in fact the brightening disappears within minutes when the serum is rinsed off, as instructed. *Id*. ¶ 31.

These tricks work, as supported by the personal experiences of Plaintiffs (ECF ¶¶ 94-97) as well as reviews on Hismile's Amazon.com Product pages by legions of customers who report being induced to purchase Products that failed to deliver the whitening benefits Hismile promised (*id*. ¶¶ 35 (tens of thousands of negative reviews by V34 Colour Corrector Serum consumers), 36 (hundreds of negative reviews of Glostick Tooth Gloss consumers), 37 (hundreds of negative reviews of PAP+ Whitening Strips), 38 (hundreds of negative reviews of PAP+ Whitening Pen)).

## C. Plaintiffs Relied on Defendants' Deceptive Claims of Instant and Dramatic Teeth-Whitening When Purchasing the Products

Plaintiffs are among the reasonable consumers who Hismile successfully appeals to through its deceptive advertising, inducing them to pay premiums for the Products on the false (but reasonable) belief that the Products instantly whiten teeth dramatically. As detailed in the FAC, Plaintiff Ledesma relied on approximately 60 Hismile Facebook ads when purchasing the V34 Colour Corrector Serum and PAP+ Whitening Pen. ECF 18 ¶ 94(a). These ads included influencer endorsements, visuals of yellow bananas and rubber ducks turning white after being coated with

purple paint, and before-and-after demonstrations by "scientists" and "dentists" showcasing the Products' instant teeth-whitening effects using color theory. *Id.* Plaintiff Tanaka relied on Hismile's Instagram and TikTok advertisements promising instant and dramatic whitening results before purchasing the Glostik Tooth Gloss and V34 Colour Corrector Serum. *Id*. ¶ 95(a). Plaintiff Jones relied on Hismile TikTok and Facebook ads when buying Defendants' PAP+ Strips Product. *Id*. ¶ 96(a). Plaintiff Deuel purchased Hismile's V34 Colour Corrector Serum in reliance on Hismile's "depictions and promises of instant and dramatic whitening" in "approximately fifteen to twenty" Hismile Instagrams ads, as well as a number of Amazon.com "customer reviews." *Id*. ¶ 97(a).

Because Hismile sold Plaintiffs Products that could not and did not deliver their advertised benefits of instant, dramatic whitening, Plaintiffs each suffered a concrete economic injury due to Hismile's false advertising: They would have paid less or nothing at all for the Products had they known they could not deliver the promised benefits. *See* ECF 18 ¶¶ 94-97.

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all allegations as true and view them favorably to Plaintiffs. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Under Federal Rule of Civil Procedure 9(b), deceptive advertising claims brought under the California False Advertising Law ("FAL"), CLRA, and California Unfair Competition Law ("UCL") must be pled with particularity. *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125-26 (9th Cir. 2009). That is, claims alleging fraud must specify "the who, what, when, where, and how" of the allegations. *Id*. Dismissal is warranted only if no plausible claim exists. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009). Whether a practice is deceptive is a factual issue inappropriate for dismissal. *Williams v. Gerber Prods.*, 552 F.3d 934, 938-39 (9th Cir. 2008).

### IV.   ARGUMENT

#### A.    Plaintiffs Have Adequately Pled Defendants' Statutory and Common Law Violations

Defendants' arguments mischaracterize Plaintiffs' allegations and ignore established legal standards for evaluating claims at the pleading stage. Contrary to Defendants' assertion that

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Plaintiffs raise only "[g]eneral grievances" or rely on "anecdotal inefficacy allegations" (ECF 29 at 10, 19-21), Plaintiffs provide detailed, well-supported factual allegations that must be taken as true and viewed in the light most favorable to Plaintiffs. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs explicitly detail how Defendants' advertising claims mislead reasonable consumers by promising instant whitening results that the Products cannot deliver. *See, e.g.*, ECF 18 ¶¶ 27 (summarizing misleading tactics), 34 (Hismile's use of unnaturally bright lighting and misleading editing and model-framing tactics in promoting its Glostik Tooth Gloss), 52-53 (Hismile's use of misleading influencer promotions to deceive consumers). These allegations are supported with scientific evidence and consumer perception data, demonstrating a clear violation of the FAL, the CLRA, and the "unfair," "fraudulent," and "unlawful" prongs of the UCL. *Id*. ¶¶ 11-173. Through these detailed factual assertions, supported by numerous reputable sources, including peer-reviewed scientific articles reflecting studies of tooth-whitening agents, Plaintiffs clearly articulate the "the who, what, when, where, and how" of their fraud-related claims in satisfaction of Rule 9(b). *Kearns v. Ford Motor Co*., 567 F.3d at 1125-26.

### 1. *Plaintiffs Adequately Identified the False Claims Upon Which They Relied*

Plaintiffs satisfy Rule 9(b)'s heightened fraud pleading standard by explicitly identifying the specific advertisements and promotional claims they viewed and relied upon when purchasing Defendants' Products, directly refuting Defendants' baseless assertion that Plaintiffs failed to articulate the "why" of the alleged fraud or identify the advertisements they saw (ECF 29 at 16).

Plaintiffs in their FAC clearly and thoroughly identify the misrepresentations on which they relied while articulating in detail how Hismile's ad campaign is fundamentally and necessarily false because the company's Products do not *and cannot* deliver the promised whitening results due to their lack of peroxide or other whitening agents capable of significant, instant whitening. *See, e.g.,* ECF 18 ¶¶ 67-75 (citing, e.g., Lena Katharina Müller-Heupt et al., *Effectiveness and Safety of Over-the-Counter Tooth-Whitening Agents Compared to Hydrogen Peroxide in Vitro*, INT J MOL SCI. 24(3):1956, (Jan. 19, 2023), https://doi.org/10.3390/ijms24031956 (finding that PAP's whitening effects over 7- to 10-day trials are far less than those of peroxide)).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Among Plaintiffs' allegations are detailed descriptions of the respective experiences of the named Plaintiffs. Plaintiff Ledesma, for example, alleges he saw approximately 60 Hismile advertisements on Facebook, including influencer endorsements, images of yellow bananas and rubber ducks turning white after being coated with purple paint, and before-and-after photos and videos featuring "scientists" and "dentists" demonstrating the Products' ability to whiten teeth instantly through color theory. ECF 18 ¶¶ 94(a). These representations directly influenced his decision to purchase the V34 Colour Corrector Serum and PAP+ Whitening Pen. *Id*.

Even regulators have highlighted and criticized some of the same tactics on which Plaintiff Ledesma reasonably relied as misleading: In April 2024, the Advertising Standards Authority, the independent regulator of advertising in the United Kingdom, noted that Hismile's use of the banana "before-and-after" imagery in promoting the V34 Colour Corrector Serum Product "reinforced" Hismile's misrepresentations that its Product "would get rid of stains immediately and make teeth appear whiter and brighter"—i.e., delivering "a lasting effect beyond short-term eating and drinking"—when there was no scientific evidence supporting this. ECF 18 ¶ 77-78.

Plaintiff Tanaka relied on numerous Hismile representations promising instant and dramatic whitening results when purchasing the Glostik Tooth Gloss and V34 Colour Corrector Serum Products. ECF 18 ¶ 95(a). These included before-and-after photos and videos included in Defendants' Instagram and TikTok advertisements promoting the Products as delivering instant whitening results after one application. *Id*. Plaintiff Tanaka also relied on the customer reviews and reactions she saw on Hismile's website and in Hismile's social media comments. *Id*. Based on her reasonable reliance on these representations, Plaintiff Tanaka expected that the Products would instantly and dramatically whiten her teeth after one application. Defendants' contention that Plaintiff Tanaka "offers no reason to believe that any Defendant was responsible" for the Fraudulent Misrepresentations upon which she relied (ECF 29 at 18) is thus unsupported. Even if Defendants could somehow demonstrate they were not responsible for the allegedly planted positive reviews— a claim they do not make and which would be premature to consider at this stage (*see Chavez v. Blue Sky Nat. Beverage Co*., 340 F. App'x 359, 360 (9th Cir. 2009) (plaintiffs are not required to resolve factual disputes or prove their allegations at the motion to dismiss stage))—Plaintiff Tanaka

clearly details how she relied on Hismile's own Instagram and TikTok ads. *See* ECF 18 ¶ 95(a).

Plaintiffs Jones and Deuel also provide detailed accounts of their reliance on Hismile's ads: Jones relied on TikTok and Facebook ads when purchasing the PAP+ Strips (ECF ¶ 96(a)), while Deuel purchased the V34 Colour Corrector Serum based on "fifteen to twenty" Hismile Instagram ads promising "instant and dramatic whitening" and Amazon customer reviews (*id*. ¶ 97(a)).

The FAC therefore provides the requisite specificity under Rule 9(b) by identifying who made the misrepresentations (Hismile), what the misrepresentations were (advertisements and promotional claims about instant whitening), when and where Plaintiffs saw them (social media platforms like Facebook, Instagram, and TikTok when deciding to purchase the Products), and how these misrepresentations influenced their purchases. ECF 18 ¶¶ 27-66, 85-93.

Defendants' caselaw further confirms that Plaintiffs' allegations are sufficient under Rule 9(b). Unlike in *Gutierrez v. Johnson & Johnson Consumer, Inc*., No. 19-CV-1345 TWR (AGS), 2021 WL 822721, at *4 (S.D. Cal. Jan. 22, 2021), where the plaintiffs failed to identify which specific advertisements they relied on or the content of those advertisements, Plaintiffs here explicitly detail the exact promotional claims and advertisements they viewed, all of which directly concern the Hismile Products they purchased. *See* ECF 18 ¶¶ 94(a) (Plaintiff Ledesma's reliance on representations in roughly 60 Hismile Facebook ads as well as influencer endorsements when purchasing V34 Colour Corrector Serum and PAP+ Whitening Pen), 95(a) (Plaintiff Tanaka's reliance on, *inter alia*, representations in numerous Hismile Instagram and TikTok ads when buying V34 Colour Corrector Serum and Glostik Tooth Gloss), 96(a) (Plaintiff Jones' reliance on representations in numerous Hismile TikTok and Facebook ads when purchasing PAP+ Strips), 97(a) (Plaintiff Deuel's reliance on, *inter alia*, representations in approximately 15 to 20 Hismile Instagram ads when purchasing V34 Colour Corrector Serum).

Defendants' reliance on other cases, such as *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007), is also misplaced. *Swartz* involved RICO claims, not false advertising, and focused on plaintiff's failure to allege facts showing co-conspirators' participation in a fraud scheme. In contrast, Plaintiffs allege Defendants' direct liability as principals, supported by detailed facts throughout their 78-page FAC demonstrating violations of California consumer protection statutes,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

common law breach of warranty, and unjust enrichment. ECF 18, *passim*.

Also inapplicable is *Rael v. New York & Co., Inc*., No. 16-CV-369-BAS(JMA), 2016 WL 7655247, at *6 (S.D. Cal. Dec. 28, 2016). In *Rael*, the plaintiff failed to provide any specific details about the in-store signage she relied on, where it was located, or even which store she visited. Here, Plaintiffs provide abundant "concrete facts," including the specific contents of Defendants' fraudulent representations, and when, where, and how they purchased Hismile Products. ECF 18 ¶¶ 94 (detailed facts supporting Plaintiff Ledesma's reliance on Hismile representations in roughly 60 Hismile Facebook ads as well as influencer endorsements when purchasing V34 Colour Corrector Serum and PAP+ Whitening Pen), 95 (detailed facts alleging Plaintiff Tanaka's reliance on, *inter alia*, representations in numerous Hismile Instagram and TikTok ads when buying V34 Colour Corrector Serum and Glostik Tooth Gloss), 96 (detailed facts demonstrating Plaintiff Jones' reliance on representations in numerous Hismile TikTok and Facebook ads when purchasing PAP+ Strips), 97 (detailed facts alleging Plaintiff Deuel's reliance on, *inter alia*, representations in approximately 15 to 20 Hismile Instagram ads when purchasing V34 Colour Corrector Serum).

Defendants' reliance on *Taylor v. Nike, Inc*., No. 3:16-CV-00661-MO, 2017 WL 663056, at *3, 6, 9 (D. Or. Feb. 17, 2017), also fails. ECF 29 at 17-18.  In *Taylor*, the court found the plaintiff failed to plead her claims with particularity, as she did not identify items priced outside the 90-day window, explain how the conduct was deceptive to a reasonable consumer, or rely on a per se fraud theory under California law. *Taylor v. Nike, Inc*., 2017 WL 663056, at *7. By contrast, Plaintiffs here detail their theory of deception, identifying the Hismile Products (ECF 18 ¶ 7), describing how the deceptive campaign misleads reasonable consumers (*id*. ¶¶ 27, 34, 52-53, 85-91) and asserting fraud-based claims under California statutes (*id*. ¶¶ 111-173) and the common law (*id*. ¶¶ 174-188).

### 2. *Plaintiffs' Allegations are Supported by Peer-Reviewed Scientific Studies, Consumer Reviews, and Other Reliable Sources.*

Defendants' claim that Plaintiffs relied solely on anecdotal evidence (ECF 29 at 19-20) is entirely unfounded. Plaintiffs support their allegations not only with their personal experiences of being misled by Hismile's deceptive ad campaign (ECF 18 ¶¶ 94-97), but also with cites to peer-reviewed articles such as Müller-Heupt et al., *Effectiveness and Safety of Over-the-Counter Tooth-*

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*Whitening Agents Compared to Hydrogen Peroxide in Vitro* (*id*. ¶ 75) (efficacy of phthalimidoperoxycaproic acid ("PAP")-based whitening products like Hismile's PAP+ Whitening Strips and PAP+ Pen Products is far inferior to that of peroxide-based products during 7- to 10-day clinical studies), Laryssa Barbosa et al., *Over-the-counter products in tooth bleaching: A scoping review* (*id*. ¶ 68 n.37) (efficacy over repeated applications, over time, of peroxide-based whitening products), and Wendy C. Fries, *Teeth Whitening: How It Works and What to Expect* (*id*. ¶ 69 n.38) (at-home tray-based peroxide gel systems typically deliver whitening results only through repeated uses spanning multiple consecutive days for up to four weeks). Plaintiffs further support the falsity of Defendants' Product claims by citing the condemnations of Hismile's Product claims by multiple advertising regulatory and trade association assessments (*id*. ¶¶ 77-84) as well as numerous reviews by customers who felt deceived after experiencing none of Hismile's promised benefits through use of their Products (*id*. ¶¶ 35-38).

As Plaintiffs set forth throughout their FAC, Defendants' claims of instant whitening benefits are inherently false because Defendants' Products *cannot* instantly whiten teeth. *See* ECF 18 ¶¶ 71-75. Effective at-home teeth whitening products "require peroxide to achieve the dramatic results advertised by Hismile." *Id*. ¶ 68. This typically involves the application of bleaching products containing a peroxide bleaching agent—either hydrogen peroxide or carbamide peroxide—that chemically whitens teeth by penetrating enamel to cause oxidation and lightening of stains. *Id*. And this process requires consistent use, in multiple applications, over multiple days or even weeks—e.g., applying commercial whitening strips for 30 minutes per day for up to 14 days or using tray-based peroxide gel systems over multiple consecutive days for up to 4 weeks. *Id*. ¶¶ 68-69 (citing Barbosa, *Over-the-counter products in tooth bleaching: A scoping review*, and Wendy C. Fries, *Teeth Whitening: How It Works and What to Expect* (affirming efficacy *over time* of using whitening products that, unlike Hismile's Products, *do* contain hydrogen peroxide or carbamide peroxide). This research supports a finding of falsity and undermines Defendants' assertion that their PAP-containing Products are "just as effective as hydrogen peroxide" products. *Id*.

On this point, Defendants attempt to refute Plaintiffs' assertions that the Products do not instantly whiten teeth by referencing a lone apparent customer review on FakeSpot's website

suggesting that Defendants' V34 serum "actually works and it works instantly." ECF 29 at 21 n.1. This argument is both premature and unavailing: ***First***, Defendants improperly issue a factual challenge to the Products' efficacy as tooth whiteners, attempting to undermine Plaintiffs' claims that the Products do not instantly whiten teeth while simultaneously suggesting they never claimed the Products whiten but merely conceal. *See Vasic v. Patent Health, LLC*, 2014 WL 940323, at *4 (S.D. Cal. Mar. 10, 2014) (disputes over scientific support for advertising claims is factual question premature at pleadings-challenge stage); *see also Chavez v. Blue Sky Nat. Beverage Co*., 340 F. App'x 359, 360 (9th Cir. 2009) (scientific evidence challenges premature at pleading challenge stage); *Hendrick v. BSH Home Appliances Corp.*, 2024 WL 2190984, at *9 (C.D. Cal. May 14, 2024) (rejecting argument that plaintiffs' cited studies failed to sufficiently support alleged "causal connection" between products and harms). ***Second***, to the extent the Court wishes to consider Defendants' improper counter-assertion, the statement on the Fakespot.com page Hismile cites— claiming that the Product "actually works and it works instantly"—appears to be nothing more than a lone review from a single unspecified purported customer review—far from scientific evidence supporting that the V34 Product "works" and "works instantly."

### 3.    *Defendants' False Advertising Deceived Reasonable Consumers*

Plaintiffs' FAC provides detailed allegations demonstrating that Defendants' Fraudulent Misrepresentations misled them and other reasonable consumers to purchase the Products. Defendants' unsupported arguments to the contrary fail for several reasons:

***First***, Plaintiffs detail how they and other reasonable consumers were induced by Defendants' Fraudulent Misrepresentations to purchase the Products. *See* ECF 18 ¶¶ 94, 96, 97. Defendants speculate it is purportedly unreasonable to believe the V34 Colour Corrector Serum and Glostik Tooth Gloss whiten teeth because they are "concealers, not permanent whiteners," and disclaimers supposedly clarify any color changes are temporary. ECF 29 at 22. Defendants' argument on this point yet again constitutes an improper premature factual challenge. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (pleadings challenges focus on allegations taken as true); *Chavez v. Blue Sky Nat. Beverage Co*., 340 F. App'x 359, 360 (9th Cir. 2009) (plaintiffs are not required to resolve factual disputes at this stage); *Vasic v. Patent Health, LLC*, 2014 WL 940323, at *4 (S.D.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Cal. Mar. 10, 2014) (scientific support for claims is a factual issue). Whether Hismile's ads conveyed that the Products whiten rather than conceal is a question of fact inappropriate for resolution at this stage.

Furthermore, Plaintiffs clearly allege that Hismile markets its Products as teeth whiteners. *See, e.g.*, ECF 18 ¶¶ 7 (reflecting front-label use of phrase "TEETH WHITENING" for PAP+ Strips and PAP+ Pen Products), 34 (website claim that Glostik Tooth Gloss Product "makes your teeth instantly whiter"), 51 (paid influencer promotion touting the "#teethwhitening" effects of V34 Colour Corrector Serum Product), 56 (promoting V34 Colour Corrector Serum as using "[c]linically-proven teeth whitening technology" to "instantly whiten your teeth"). Indeed, even the very third-party screenshots Defendants now improperly seek to introduce via judicial notice for the purpose of supporting a premature factual challenge[3] (*see* ECF 29-2 (RJN); ECF 29-3, Ex. 1; ECF 29-4, Ex. 2; ECF 29-5, Ex. 3) demonstrate that Defendants promote their Products for their purported teeth-whitening powers through claims of "instant brightening" (ECF 29-3, Ex. 1) and "powerful teeth brightening technology" (ECF 29-4, Ex. 2) and the promise of "instantly whiter teeth" (ECF 29-5, Ex. 3). Defendants' reliance on disclaimers buried on their website or briefly displayed in videos ignores research showing consumers rely primarily on prominent claims in advertisements. ECF 18 ¶ 47.

**Second**, Plaintiffs have detailed how Hismile misled thousands of similarly situated reasonable consumers into purchasing Hismile Products through deceptive advertising, including visual representations (e.g., "before-and-after" comparisons (ECF 18 ¶¶ 28-33)) and textual claims (e.g., "instant brightening wand . . . adds a pearlescent glow to your teeth" (*id*. ¶ 43)), promoting Products that cannot and do not instantly whiten teeth.

Defendants' comparisons of the facts alleged here to those in cases like *Aloudi v. Intramedic*

---

[3] As detailed in Plaintiffs' Objection to Request for Judicial Notice, Defendants improperly offer Exhibits 1 through 3 to support a factual challenge at the pleadings stage—and even if admitted, those exhibits lack probative value. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (courts "usually confined to reviewing the body of [a] plaintiff's complaint" and may only consider documents not attached to complaint, where authenticity is uncontested, and are necessarily relied upon by the complaint).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*Rsch. Grp., LLC, Deetsch v. Lei*, and *Min Sook Shin v. Umeken* (*see* ECF 29 at 19-20) mischaracterize Plaintiffs' allegations. Here, Plaintiffs do not rely on a single individual's isolated experience to show the Products' failure to deliver instant tooth whitening. Instead, Plaintiffs detail their own experiences as deceived consumers representing thousands of other Hismile customers misled into believing the Products would instantly and dramatically whiten teeth. ECF 18 ¶¶ 8, 85-97.

This case aligns more closely with *Nguyen v. Lotus by Johnny Dung Inc*., where the court denied dismissal because the plaintiffs alleged not only that the products did not work for them but that the advertised benefits were false. 2019 WL 1957962, at *1 (C.D. Cal. Jan. 7, 2019). Similarly, as Hismile's Products lack the peroxide or carbamide peroxide agents necessary to *even gradually* oxidize stains, they no more deliver instant whitening than the "Super Advanced Fucoidan Plus 800 mg" in *Nguyen* strengthened immune systems by 900 percent. *See* ECF 18 ¶¶ 70-72.

Defendants' claim that Plaintiffs' experiences are aberrational is unsupported given the cited science and findings from advertising regulators. The U.S. National Advertising Division ("NAD") issued reports in April and August 2024 recommending that Hismile cease advertising its PAP Products as "as effective as hydrogen peroxide" or capable of providing "instant" whitening due to insufficient evidence. ECF 18 ¶¶ 79-83 n. 42-43. The NAD referred the matter to the Federal Trade Commission for further action. *Id*. Similarly, the British Advertising Standards Authority found in April 2024 that Hismile's V34 Product ads were misleading due to a lack of scientific evidence for lasting whitening effects. *Id*. ¶¶ 77, 78 n. 40-41.

Finally, Hismile's multi-million-dollar marketing campaign underscores its recognition of the power of its misleading claims. Exploiting its 8.5 million Instagram, TikTok, and Facebook followers, Hismile ran heavily produced promotions featuring celebrities like Kim Kardashian. ECF 18 ¶¶ 23-26. The substantial investment in such campaigns shows Defendants' understanding that reasonable consumers rely on these claims—a strategy that drives their marketing expenditures. *Id*.

***Third***, Hismile's Fraudulent Misrepresentations about the Products' ability to instantly and dramatically whiten teeth are specific and actionable, contrary to Defendants' claims. ECF 29 at 24. Plaintiffs' FAC includes numerous examples, such as before-and-after pictorials and testimonials

from actors posing as customers, scientists, and dentists, showing discolored teeth turning "pearlescent" white within minutes of applying the Products. ECF 18 ¶¶ 43-44, 56-57, 64-66. Merriam-Webster defines "instant" as "produced or occurring with extreme rapidity and ease," aligning with Defendants' claims that the V34 Product works in just two minutes, as conveyed in social media ads and fake customer reviews. *Id*. ¶¶ 43-44, 56-57, 94(b), 95(b), 97(b). Similarly, "dramatic" means "sudden and extreme," reflecting Defendants' promise of rapid, extreme whitening results. *Id*. ¶¶ 1, 3-4, 24, 27, 34, 43, 56-58.

Defendants' claims are not vague or subjective, unlike those in *Tomek v. Apple, Inc.* (claims of "dramatic speed"), *Ahern v. Apple Inc.* (claims of "clear and remarkably vivid" screens), and *Hadley v. Kellogg Sales Co.* (claims of "unbelievably nutritious" food). Instead, Hismile explicitly promises specific results—markedly whiter teeth in minutes—through widely understood terms and images. ECF 18, *passim.* As these claims are false, they are actionable under the FAL, CLRA, UCL, and Plaintiffs' common law claims.

***Fourth***, Plaintiffs detail in their FAC how Defendants manipulated third-party review platforms by submitting fake reviews through Hismile employees posing as customers. ECF 18 ¶ 44. Plaintiff Deuel specifically notes that he relied on numerous glowing Amazon.com "customer" reviews, along with Hismile's advertisements, in deciding to purchase the Products. Plaintiffs also highlight Fakespot's finding that approximately 12,800 of the 64,000 Amazon reviews for the V34 Colour Corrector were unreliable, using it as evidence of the scope of Defendants' manipulation and exploitation of consumers. *Id*. ¶¶ 39-41, 43-44.

Hismile misreads Plaintiffs' assertions as to the reviews and misunderstands the dual purposes for which Plaintiffs highlights them in their FAC, arguing without elaboration that Plaintiffs' reference to the reviews is undermined because Plaintiffs did not allege "that *all* consumer reviews are fake." ECF 29 at 23. Plaintiffs do not allege this because Plaintiffs highlight specific reviews as clearly fake, noting that, for example, one such review contains verbiage virtually identical to Hismile's own promotional web copy. ECF 18 ¶ 44. As to Hismile's claim that it did not plant such reviews (ECF 29 at 23), that too raises a factual dispute inappropriate for consideration on summary judgment. *Chavez v. Blue Sky Nat. Beverage Co*., 340 F. App'x 359, 360

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1   (9th Cir. 2009) (resolution of factual disputes not required at pleadings stage). Finally, as to

2   Defendants' claim that "the FAC never identifies *any* consumer reviews that any Plaintiff relied

3   upon" (ECF 29 at 23), that is refuted by the face of the FAC, where, e.g., Plaintiff Tanaka stated

4   that she relied on "customer reviews and reactions she saw on Hismile's website and in Hismile's

5   social media comments" when purchasing the Products (ECF 18 ¶ 95(a)), and Plaintiff Deuel stated

6   that he relied on "customer reviews he saw on Amazon.com" when purchasing the Products (*id*. ¶

7   97(a)).

8           **Fifth**, Plaintiffs are alleging actual falsity, not a lack of substantiation, contrary to

9   Defendants' claim (ECF 29 at 24-25). As Plaintiffs explain in detail in the FAC, none of Hismile's

10  Products even contain the peroxide-based whitening agents that Hismile's legitimate competitors in

11  the at-home tooth-whitening space typically use for their products, *which typically require repeated*

12  *applications spanning several days or weeks to prove effective*. ECF 18 ¶¶ 68-72. And the two

13  Hismile Products that contain the peroxide whitening alternative in phthalimidoperoxycaproic acid

14  (the PAP+ Whitening Strips and PAP+ Pen) (*see id*. ¶¶ 71-72) cannot possibly deliver the

15  immediate, dramatic whitening results Hismile promises because studies show that peroxide-based

16  at-home whitening products—which, again, cannot deliver Defendants' promised "instant"

17  whitening effects because they typically require repeated applications over several days or weeks to

18  yield results—are considerably more effective than PAP-based whitening products (*id*. ¶¶ 74, 75

19  n.39 (citing Müller-Heupt et al., *Effectiveness and Safety of Over-the-Counter Tooth-Whitening*

20  *Agents Compared to Hydrogen Peroxide In Vitro* (peroxide-based whiteners significantly

21  outperformed PAP whiteners in 7- to 10-day trials))). Defendants yet again misunderstand or

22  misrepresent Plaintiffs' allegations, as Plaintiffs in the FAC reference Defendants' use of

23  pseudoscience to highlight the falsity of their Product representations, not to assert that Defendants

24  failed to provide reliable scientific support. For example, Plaintiffs cite Defendants' own

25  disclaimers that a video demonstrating the "science" of color theory "is not a real experiment" (*id*.

26  18 ¶ 63) and note the use of terms like "color correction technology," "light interference

27  technology," and "reflective pigments," which amount to pseudoscientific jargon (*id*. ¶¶ 3, 61-63).

28          This case is unlike *Stanley v. Bayer Healthcare LLC.* and *Fraker v. Bayer Corp.*, where

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    claims focused on the lack of scientific substantiation, or *Kwan v. SanMedica Int'l*, where the Ninth

2    Circuit rejected a private right to demand substantiation under the CLRA and UCL. Plaintiffs are

3    not "demanding substantiation" but alleging *actual falsity*, as the Products are *incapable* of

4    delivering the advertised whitening benefits because all four of them lack the peroxide-based

5    whitening agents required to convey even gradual significant whitening benefits through at-home

6    whitening use spanning several days or weeks. ECF 18 ¶¶ 68-72. And two of the Products—the

7    V34 Colour Corrector and the Glostik Tooth Gloss—do not even contain the significantly weaker

8    PAP whitening agent (which, again, are themselves incapable of delivering the claimed instant

9    whitening effects). *Id*. ¶ 72.

10           **4.    *Plaintiffs Adequately Pled Defendants' Violations of the FAL, CLRA, and***
11                   ***UCL.***

12           Plaintiffs plausibly allege in their FAC that Defendants' Fraudulent Misrepresentations

13    violated the FAL, CLRA, and UCL by misleading consumers into buying the Products under the

14    false belief of instant, dramatic teeth whitening. *See* ECF 18 ¶¶ 94 (Plaintiff Ledesma's reasonable

15    reliance and purchase of Products), 95 (Plaintiff Tanaka's reasonable reliance and purchase of

16    Products), 96 (Plaintiff Jones' reasonable reliance and purchase of Products), 97 (Plaintiff Deuel's

17    reasonable reliance and purchase of Products); *see also Williams v. Gerber Prods. Co.*, 552 F.3d

18    934, 938 (9th Cir. 2008) (California consumer protection statutory claims governed by "reasonable

19    consumer" standard, under which courts determine whether it is plausible that allegedly misleading

20    advertising claims are likely to deceive members of the public).

21           To demonstrate the falsity of Hismile's claims, Plaintiffs support their detailed allegations

22    with cites to medical studies (*see, e.g.*, ECF 18 ¶¶ 74, 75 n. 39 (citing *Effectiveness and Safety of*

23    *Over-the-Counter Tooth-Whitening Agents Compared to Hydrogen Peroxide in Vitro*)) and

24    regulatory assessments (*see, e.g., id*. ¶¶ 77, 78 n. 40-41 (Advertising Standards Authority's April

25    2024 findings that V34 Product marketing claims were misleading due to Products' inability to

26    deliver promised "lasting" whitening benefits) concluding that Defendants' claims of instant

27    whitening were impossible, including because the Products contain no exceptionally strong

28    peroxide or other agents capable of producing such advertised effects (*id*. ¶¶ 3, 27, 80).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Taken as true, as they must (*Twombly*, 550 U.S. at 556-57), Plaintiffs' detailed allegations that they were reasonably deceived by Defendants' Fraudulent Misrepresentations into purchasing the Products establish plausible violations of the FAL and CLRA, as well as the UCL's "fraudulent" and "unfair" prongs. *See* ECF 18 ¶¶ 111-141, 150-173; *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006) (conduct is "unfair" under UCL if it causes consumer harm that outweighs benefits and cannot reasonably be avoided). On the bases of these predicate statutory violations, Plaintiffs have also alleged sufficient facts to support a factfinder's conclusion that Defendants engaged in "unlawful" practices in violation of the UCL. *See* ECF 18 ¶¶ 142-149; *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994) (violations of federal, state, or local law can support a UCL "unlawful" prong claim).

While Hismile may later argue that Plaintiffs and consumers purportedly misinterpreted the Product representations, this remains a factual dispute, and at this stage, Plaintiffs' claims must be accepted as true. *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010) (dismissal of such claims is appropriate only in "rare situations" where, "[v]iewing the facts in the light most favorable to plaintiff," it is "'*impossible* for the plaintiff to prove that a reasonable consumer was likely to be deceived'") (quoting *Williams*, 552 F.3d at 939) (emphasis added); *Williams*, 552 F.3d at 938 (as to UCL claims, "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer"). For now, Plaintiffs have satisfied their burden of alleging that Hismile's Product claims were deceptive to them and other "ordinary consumer[s] acting reasonably under the circumstances" who are "not versed in the art of inspecting and judging a product[.]" *Colgan v. Leatherman Tool Grp., Inc*., 135 Cal. App. 4th 663, 682 (2006).

### 5. *Plaintiffs Have Adequately Pled Unjust Enrichment and Breach of Warranty*

Plaintiffs satisfy Rule 9(b)'s heightened fraud pleading standards as to unjust enrichment and breach of warranty by alleging sufficient facts supporting these common-law violations.

#### a.    Plaintiffs' Unjust Enrichment Claim Is Pled with Particularity

Defendants' assertion that Plaintiffs have not alleged unjust enrichment with particularity is incorrect. Plaintiffs specifically describe the social media ads and suspected fake Amazon.com

reviews they relied on when purchasing the Products (ECF 18 ¶ 97(a)), "how" the ads and reviews were false and misleading (*see, e.g.*, *id.* ¶¶ 43-44), and "why" the Products could not deliver the promised instant and dramatic tooth-whitening results (*see, e.g.*, *id.* ¶¶ 67-76). Plaintiffs also allege that Defendants wrongfully collected immense revenues—totaling billions of dollars—through this deceptive marketing. *Id.* ¶¶ 1, 23. Accordingly, Defendants' motion to dismiss Plaintiffs' statutory claims (Counts One through Three) should be denied, and their challenge to the unjust enrichment claim based on an "absence of predicates" fails by default. *See Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009) (unjust enrichment may rely on statutory predicates). Contrary to Defendants' claim, California law recognizes unjust enrichment as a standalone cause of action. Courts routinely allow plaintiffs to plead both standalone unjust enrichment and express warranty claims concurrently at this stage, even if plaintiffs cannot ultimately prevail on both. *See Sue Shin v. Sanyo Foods Corp. of Am.*, 2024 WL 4467603, at *1, *4 n.3 (C.D. Cal. Aug. 13, 2024).

Defendants' argument that Plaintiffs fail to identify which state laws apply to their unjust enrichment claims is premature at the motion to dismiss stage. Courts consistently decline to conduct detailed choice-of-law analyses without a developed factual record. *See Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *3 (N.D. Cal. Sept. 8, 2016); *In re Clorox Consumer Litigation*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 943 (N.D. Cal. 2013).

### b.    Plaintiffs' Warranty Claims are Adequately Pled

Defendants' challenges to Plaintiffs' warranty cause of action similarly falls short. While it is unclear whether Defendants intended to challenge the adequacy of Plaintiffs' breach of warranty cause of action, as they only superficially address this (*see* ECF 29 at 10, 30), Plaintiffs have likewise adequately pled Count Four as to both express warranty and implied warranty of merchantability (*see* ECF 18 ¶¶ 174-180). Plaintiffs in their FAC incorporate the same foundational facts detailed *supra* (*see* Sections IV.A(1)-(3)) establishing that Hismile (1) expressly claimed that its Products provide "instant whitening" effects they cannot and do not deliver and (2) as a merchant made promises and affirmations of instant, dramatic tooth-whitening qualities through its promotion and sale of the Products that the Products (*see* ECF 18 ¶¶ 176-178). The Products' inherent inability

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

to instantly and dramatically whiten Plaintiffs' and other reasonable consumers' teeth as promised establishes Defendants' liability for breach of express and implied warranties, respectively (*see id*. ¶¶ 176-178), as Plaintiffs have alleged "the who, what, when, where, and how" of each warranty claim (*see Kearns v. Ford Motor Co*., 567 F.3d at 1125-26).

Specifically, Plaintiffs have alleged that Defendants did not deliver the express promises of instant tooth-whitening because their Products do not—and cannot—deliver instant tooth-whitening since they do not contain peroxide or comparable whitening agents (ECF 18 ¶¶ 68-70, 176), and for the same reason the Products did not conform to the promises or affirmations of fact Defendants made through its marketing and advertising of the Products (*id*. ¶¶ 68-70, 177).

Plaintiffs have thus alleged facts sufficient to support plausible claims of breach of both express and implied warranties (*see Ashcroft*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 570; *Kearns*, 567 F.3d at 1125-26). Defendants' motion to dismiss Plaintiffs' warranty claims on grounds of facial inadequacy, to the extent they exist, should therefore be rejected as well.

**B.    Plaintiffs Provided Defendants Sufficient Notice of Their Claims**

Hismile claims Plaintiffs failed to provide adequate notice for their CLRA and warranty causes of action. ECF 29 at 26-28. This argument fails, as Plaintiffs sent a February 16, 2024 letter via U.S. Certified Mail to Hismile's registered agent, FLP Services, LLC, notifying Defendants of their intent to pursue CLRA claims and implicitly related warranty claims "on behalf of all persons who purchased the Products for purposes other than resale, at any time since the Products were first sold . . . in the United States . . . and in California."[4] ECF 18 ¶ 170; Omnibus Declaration of Bahar Sodaify ("Sodaify Decl.") ¶ 2.

Defendants do not dispute that they received Plaintiffs' notice but challenge whether its contents satisfied the requirements for both the CLRA and warranty causes of action. ECF 29 at 26-27. However, neither *Ang v. Bimbo Bakeries USA, Inc*. nor *Cattie v. Wal-Mart Stores, Inc*. supports Defendants' claim that Plaintiffs failed to provide adequate notice under California Civil Code

---

[4] Plaintiffs are concurrently opposing Defendants' December 16, 2024 request for judicial notice as to the notice letter because it constitutes a confidential settlement communication under Federal Rules of Evidence 408 (ECF 29-2). *See* Plaintiffs' Objection to Defendants' Request for Judicial Notice in Support of Motion to Dismiss FAC.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Section 1782(a) by not naming all four currently named Plaintiffs in the February 16, 2024 statutory notice letter (*see* ECF 29 at 27). Amending complaints to add or substitute plaintiffs is standard practice under California law, and requiring CLRA plaintiffs to dismiss suits and reissue notice every time a plaintiff changes conflicts with the CLRA's goal of consumer protection, not creating technical barriers. *See Nacarino v. KSF Acquisitions Corp.*, 642 F. Supp. 3d 1074, 1084 (N.D. Cal. 2022) (Section 1782 notice is intended to facilitate pre-litigation resolution, not impose arbitrary obstacles that obstruct consumers seeking to hold defendants accountable).

Moreover, Defendants' acknowledgment of receiving Plaintiffs' February 16, 2024 CLRA notice effectively waives their right to contest its sufficiency. *See Benipayo v. Volkswagen Grp. of Am., Inc.*, 2020 WL 553884, at *7 (N.D. Cal. Feb. 4, 2020) ("Challenges to the sufficiency of section 1782 notice can be waived when the defendants explicitly indicate they recognize the relevant communication as [a] section 1782(a) notice, despite any ostensible deficiencies").

Defendants' warranty notice challenge (ECF 29 at 26-27) is similarly flawed. Through their February 16, 2024 statutory notice letter and subsequent communications with defense counsel before filing suit, Plaintiffs thoroughly outlined their claims, emphasizing that they and other consumers reasonably interpreted Hismile's express and implied whitening claims as representing that the Products instantly whitened teeth. *See* Sodaify Decl. ¶¶ 2, 4-13. Through these communications, Plaintiffs placed Hismile on notice of the alleged breach at hand well ahead of filing suit—yet Hismile failed to remedy that breach. *Id.* ¶¶ 2, 4-13, 15; *see* Cal. Comm. Code § 2607(3)(A) (buyers required to notify seller of breach "within a reasonable time" of when they discovered or should have discovered the breach to allow seller to cure). And neither *Donohue v. Apple, Inc.* (871 F. Supp. 2d 913 (N.D. Cal. 2012)) nor *Alvarez v. Chevron Corp.* (656 F.3d 925 (9th Cir. 2011)) lend support to Hismile's position because Plaintiffs notified Hismile of detailed facts supporting their exposure to warranty claims through the above-specified correspondence. *See* Sodaify Decl. ¶¶ 2, 4-13

Finally, Defendants' argument leads to an unreasonable result, effectively barring routine amendments to add plaintiffs to warranty claims. Notably, Defendants do not—and cannot—argue prejudice from the absence of the four current Plaintiffs in the statutory notice letter, as that letter

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

expressly represented all similarly situated consumers, which includes Plaintiffs. Sodaify Decl. ¶ 2. Through this letter and subsequent pre-filing communications, Plaintiffs clearly informed Hismile that its Products failed to deliver the promised whitening effects to consumers and did not conform to its representations, putting Defendants on notice of their breach of express and implied warranties. *See* ECF 18 ¶¶ 176-177; *see also* Sodaify Decl. ¶¶ 2-13.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss on all grounds. To the extent the Court believes there are any pleading defects, Plaintiffs respectfully request leave to amend. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (noting Ninth Circuit applies policy of "extreme liberality" in granting leave to amend).

Date: February 10, 2025                               **CLARKSON LAW FIRM, P.C.**

By: */s/ Bahar Sodaify*
Shireen M. Clarkson
Bahar Sodaify
Benjamin J. Fuchs
Meg Berkowitz

*Attorneys for Plaintiffs*