UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER LEDESMA, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>HISMILE, INC., et al.,<br><br>　　　　　Defendants. | Case No. 24-cv-03626-KAW<br><br>**ORDER GRANTING MOTION TO DISMISS; DENYING MOTION TO STRIKE AS MOOT**<br><br>Re: Dkt. Nos. 65, 68 |

Plaintiffs filed the instant putative class action against Defendants Hismile, Inc. ("HI") and Hismile Pty Ltd. ("HPL"), alleging that Defendants engaged in a "pervasive fraudulent marketing campaign claiming that its teeth-whitening products can deliver 'instant whitening' results." (Second Amend. Compl. ("SAC") ¶ 1, Dkt. No. 60.)  Pending before the Court are: (1) Defendants' motion to dismiss and (2) Defendants' motion to strike the nationwide class allegations.  (Defs.' Mot. to Dismiss, Dkt. No. 65; Defs.' Mot. to Strike, Dkt. No. 68.)

Having considered the parties' filings, the legal authorities, and the arguments made at the April 16, 2026 hearing, the Court: (1) GRANTS Defendants' motion to dismiss with prejudice and (2) DENIES Defendants' motion to strike as moot.

## I.    BACKGROUND

Defendants sell teeth whitening products, including: (1) V34 Colour Corrector Serum, (2) Glostik Tooth Gloss, (3) PAP+ Whitening Strips, and (4) PAP+ Whitening Pen.  (SAC ¶ 6.) Plaintiffs allege that Defendants used "coordinated social media advertising" that included "falsified before-and-after images and videos, misleading celebrity endorsements, and deceptive influencer content," as well as "publishing self-sponsored 'customer reviews' and directing its own employees to pose as satisfied consumers across social media," all of which "convey the

same false core message--that its products deliver instant teeth whitening." (SAC ¶ 1.)

Plaintiffs allege that starting more than ten years ago, Defendants began advertising on social media platforms, "regularly publishing promotional content to market its Products as providing instant teeth whitening benefits." (SAC ¶ 106.) Defendants began promoting the brand on TikTok in May 2016 (5.1 million followers and over 115 million likes), on Instagram in March 2022 (1.7 million followers), and on YouTube in November 2023 (120,000 subscribers). (SAC ¶¶ 108-110.) Defendants spend tens of millions of dollars per year on social media posts, mostly aimed at their target market of females between the ages of 15 and 24. (SAC ¶ 23.) The advertising campaign includes publishing a high volume of videos, including posting 15 or more videos a day on a TikTok account. (SAC ¶¶ 24, 119.) Using digital marketing, Defendants are able "to saturate consumers' digital environments with a steady stream of advertisements--often dozens of impressions each time a consumer opens a social media app." (SAC ¶ 30.) All of the ads, however, "convey the same false core message: that Hismile's Products deliver 'instant teeth whitening' results." (SAC ¶ 30.)

Examples of these advertisements include:

**Before-and-After Images**: Defendants allegedly create advertisements showing brown solution being applied to a model's teeth before immediately removing it with its products to "create a more amplified before-and-after instant whitening effect." (SAC ¶ 38.) In advertisements for the PAP+ products, Defendants use artificial staining and jump-cut editing to exaggerate the effects of these products. (SAC ¶¶ 41, 42.) Defendants also use unnaturally bright lighting and models who already have very white teeth to exaggerate the before-and-after effect of the Glostik Tooth Gloss. (SAC ¶ 43.)

**False Reviews**: Defendants allegedly post fake positive reviews on Amazon. (SAC ¶ 53.) Defendants also effectively removed negative reviews from its website when it stopped hosting customer reviews altogether after getting numerous negative reviews. (SAC ¶ 49.)

**Fake Customers**: Defendants allegedly create videos of its employees pretending to be normal consumers, accompanied by a "disclaimer" stating: "Non-permanent. Results may vary. Staff results." (SAC ¶ 56.) Defendants also pay influencers to promote its products without

disclosing that their posts are advertisements, contrary to TikTok's requirements.  (SAC ¶ 60.)

**Misleading Celebrity Endorsements**: Defendants pay celebrities, such as Kim Kardashian and Kylie Jenner, to endorse its products without disclosing that the celebrities already have very white teeth and are not bona fide users of the products.  (SAC ¶¶ 61-65.)

**Clinically Proven**: Starting in February 2024, Defendants advertised that the V34 Colour Corrector "has been proven in a clinical trial to instantly whiten your teeth."  (SAC ¶ 67.)

**"Pseudoscience"**: Defendants assert that the V34 Colour Corrector and Glostik Tooth Gloss "instantly whiten teeth" because of "color correction technology: purple and yellow are complementary colors opposite to each other on the color wheel, so purple 'cancels out yellow undertones' to reveal white teeth instantly."  (SAC ¶ 71.)  Advertisements depict this alleged science "by dipping yellow objects in purple paint, overlaying purple and yellow discs, and making comparisons to purple shampoo which is known to neutralize brassy tones and yellowing in blonde hair."  (SAC ¶ 71.)  Defendants also stage videos with scenes of "scientists" and "dental professionals" appearing to study the products in professional settings, but the scientists are actors wearing lab coats or dental scrubs while carrying clipboards.  (SAC ¶ 75.)

Together, there are currently thousands of advertisements posted on Defendants' social media accounts.  (SAC ¶ 119.)  Plaintiffs allege that these videos use the same core advertising methods, and that many advertisements "reus[e] the exact same clips in a different order, or with different actors reading similar scripts and acting out similar scenarios."  (SAC ¶ 119.)

Plaintiffs, in turn, are individuals who purchased Defendants' products.  For example, Plaintiff Alexander Ledesma first encountered Defendants' advertising in 2023.  (SAC ¶ 137(a).)  After clicking on an ad for the products, Plaintiff Ledesma began receiving roughly twelve such advertisements per day on Instagram and three per day on Facebook.  (SAC ¶ 137(a).)  The advertisements included "scientists" or "dentists" claiming that Defendants' products could instantly whiten teeth by applying "color theory," visual demonstrations of yellow objects such as bananas and rubber ducks turning white after being coated with purple paint, endorsements from unidentified "micro-influencers," and positive customer reviews and comments.  (SAC ¶ 137(b).)  Based on this advertising, Plaintiff Ledesma believed and expected that Defendant's products

United States District Court
Northern District of California

would produce an "instant whitening effect."  (SAC ¶ 137(b).)  After two weeks of "relentless exposure" to these advertisements, Plaintiff Ledesma purchased the V34 Colour Corrector Serum and PAP+ Whitening Pen.  (SAC ¶¶ 137(a), (b).)

Plaintiff Christopher Deuel, in turn, observed advertisements for the V34 Colour Corrector Serum when browsing the internet for other subjects, such as looking for a new dentist on YouTube.  (SAC ¶ 140(a).)  Plaintiff Deuel estimated receiving approximately fifteen to thirty advertisements on Instagram within a week.  (SAC ¶ 140(a).)  Plaintiff Deuel saw advertisements including before-and-after photographs and videos, videos demonstrating the science of color theory by wiping purple paint off of yellow objects like bananas, videos including "scientists" and "dentists" explaining the science of color theory, videos claiming that the V34 product was "clinically proven" to instantly whiten teeth, and influencer promotions including those from Kim Kardashian and unidentified micro-influencers.  (SAC ¶ 140(b).)  Plaintiff also viewed approximately twenty-five customer reviews.  (SAC ¶ 140(a).)   After being "bombarded" with Defendants' marketing materials for three months, Plaintiff decided to purchase the V34 Colour Corrector Serum.  (SAC ¶ 140(a).)

Based on these facts, Plaintiff filed the instant case on June 14, 2024.  (Dkt. No. 1.)  On September 3, 2024, Plaintiff filed a first amended complaint.  (Dkt. No. 18.)  Defendants then filed separate motions to dismiss and a motion to strike the nationwide class allegations.  (Dkt. Nos. 29-31.)  On September 23, 2025, the Court granted Defendants' motions to dismiss and motion to strike without prejudice.  (Dismissal Order, Dkt. No. 57.)

On October 23, 2025, Plaintiffs filed the operative complaint, bringing claims for: (1) violation of California's Unfair Competition Law ("UCL"), (2) violation of California's False Advertising Law ("FAL"), (3) violation of California's Consumers Legal Remedies Act ("CLRA"), (4) violation of New York's Consumer Fraud Act, (5) breach of warranty, and (6) unjust enrichment.  Each claim is based on Defendants' alleged misrepresentation that its products "instantly whiten teeth."  (SAC ¶¶ 36, 159, 198, 210, 224, 233, 242, 254.)

On December 18, 2025, Defendants filed a motion to dismiss and a motion to strike the nationwide class allegations.  On January 26, 2026, Plaintiffs filed oppositions.  (Pls.' Opp'n re

4

Mot. to Dismiss, Dkt. No. 69; Pls.' Opp'n re Mot. to Strike, Dkt. No. 70.)  On March 13, 2026, Defendants filed reply briefs.  (Defs.' Reply re Mot. to Dismiss, Dkt. No. 75; Defs.' Reply re Mot. to Strike, Dkt. No. 74.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate.  *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . .  When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

United States District Court
Northern District of California

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III.    DISCUSSION

#### A.    Rule 9(b) Standard for Fraud

Defendants seek to dismiss all of Plaintiffs' claims for failure to satisfy Rule 9(b)'s heightened pleading standard.  (Defs.' Mot. to Dismiss at 7.)  Because Plaintiffs' claims are grounded in fraud, *i.e.*, the alleged false representation that Defendants' products "deliver "instant whitening" results (*see* SAC ¶ 1), Plaintiffs must satisfy Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  "Rule 9(b) demands that the circumstances consisting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 1124 (cleaned up).  Thus, a plaintiff must allege "the who, what, when, where, and how of the misconduct charged." *Id.* (internal quotation omitted).

In the prior motion to dismiss, Defendants argued that Plaintiff failed to identify the specific advertisements that they saw.  (Dismissal Order at 9).  The Court found that typically, courts have required that a plaintiff identify the specific advertisement and promotional materials that they were exposed to, such that it was insufficient for the complaint to merely include representative advertisements. (*Id.* at 9-10.)  The Court, however, found that following the lead of the California Supreme Court's ruling in *In re Tobacco II*, "California courts have recognized an exception to the requirement that a plaintiff identify the specific advertisement they relied upon 'where a claim of fraud is based upon a long-term advertising campaign, which may seek to persuade by cumulative impact, not by a particular representation on a particular date.'" (*Id.* at 11 (quoting *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1262 (2009)).)  Under such authority, the Court found that "this appears to be a case where Plaintiffs could potentially allege a pervasive, targeted advertising campaign over a period of time, all of which pushes the same message: that Defendants' products will 'instantly and dramatically whiten teeth.'" *(Id.* at 12.)  In particular, the Court acknowledged the difficulties posed by "the type of social media

United States District Court
Northern District of California

marketing that is occurring in this case, namely the alleged flooding of social media users' feeds with multiple variations of similar videos pushing the same message." (*Id.* at 13 (citing *In re Ethereummax Inv. Litig.*, CV 22-163-MWS (SKx), 2025 U.S. Dist. LEXIS 159470, at *17 (C.D. Cal. Aug. 6, 2025)).)

Finding that Plaintiffs had not yet met the Rule 9(b) standard, the Court explained that Plaintiffs would need to "plausibly allege that this is the type of advertising campaign that would not require them to identify the specific advertisements they viewed." (Dismissal Order at 13-14.) This included identifying the duration of the advertising campaign at issue and their exposure to it. (*Id.* at 14.) The Court also noted that to the extent Plaintiffs were relying on influencer endorsements without identifying the influencer or what was said, as well as reviews without specifying who made the reviews or what they stated, "Plaintiffs will need to provide sufficient allegations to demonstrate that the endorsements or reviews they relied upon were false." (*Id.*)

Having reviewed the amended complaint, the Court finds that Plaintiffs have adequately alleged an advertising campaign that would not require the identification of specific advertisements for purposes of the California claims.[1] *See In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*, No. ML 12-2317 CAS (JEMx), 2012 U.S. Dist. LEXIS 172869, at *41 (finding that the plaintiffs were not required to identify the specific advertisement they saw where the complaint alleged "expos[ure] to a national advertising campaign that utilized several slightly different advertisements all articulating a common allegedly fraudulent message" and identified "which type of advertising (infomercial, online, etc.) each plaintiff [] viewed"). Here, Plaintiffs have alleged that Defendants allegedly started an advertising campaign more than ten years ago[2] and saturates social media user feeds with videos, many of which reuse the same

---

[1] In the reply, Defendants for the first time argue that New York does not have an analogous case to *Tobacco II*, such that Plaintiffs cannot rely on the allegations of "pervasive advertising." (Defs.' Reply at 11.) "Arguments raised . . . only on reply[] are generally deemed waived." *Riegels v. Comm'r (In re Estate of Saunders)*, 745 F.3d 953, 962 n.8 (9th Cir. 2014). Because the Court ultimately finds that all of Plaintiffs' claims fail due to the failure to allege a false or misleading statement likely to deceive the general public, the Court does not address whether *Tobacco II* would apply to New York claims.

[2] Defendants state in their reply that the advertising campaign as to the products at issue could not have lasted ten years because the products were not sold until 2021 and 2023, but this first sale

clips in different orders or with different actors reading similar scripts or acting out similar scenarios.  (*See* SAC ¶¶ 30, 106, 119.)  Plaintiffs further allege that all of these advertisements push "the same false core message: that Hismile's Products deliver 'instant teeth whitening' results."  (SAC ¶ 30.)  Plaintiffs also describe their own individual exposure to this advertising campaign, including when and/or how long they saw the advertisements, what social media platforms they saw the advertisements on, more specific examples of the types of advertisements they saw, and the effect of those advertisements on Plaintiffs' perception of the product -- namely, that the products "would produce an instant whitening effect."  (*See* SAC ¶¶ 137-142.)  Such allegations are sufficient to identify the who (Defendants), what (the advertising campaign and the types of advertisements viewed by Plaintiffs), when (the length of the advertising campaign and approximately when Plaintiffs were exposed to it), where (the social media platforms Plaintiffs viewed the ads on), and how (the allegedly false claim spread by the advertising campaign that Defendants' products "instantly" whiten teeth) required by Rule 9(b).  Courts have found such allegations sufficient to satisfy Rule 9(b).  *See In re Oreck Corp.*, 2012 U.S. Dist. LEXIS 172869, at *42 ("By identifying a clear common message in the advertising campaign and identifying numerous examples that repeat this message, plaintiffs have adequately notified defendants of the 'who, what, when, where and how of the misconduct charged.'").

Defendants argue that the instant case falls outside the ambit of *Tobacco II* and its progeny because Plaintiffs have not alleged that their exposure has lasted for a significant period of time.  (Defs.' Mot. to Dismiss at 8.)  Defendants, however, conflate how long an advertising campaign has lasted with how long a plaintiff was exposed.  For example, in *Dodson v. Tempur-Sealy Int'l, Inc.*, the district court found allegations of a "long term advertising campaign" to be sufficient to plead reliance under *Tobacco II*, but did not discuss how long the plaintiffs needed to be exposed to the campaign.  No. 13-cv-04984-JST, 2014 U.S. Dist. LEXIS 54071, at *15-16, 20-21 (N.D. Cal. Apr. 16, 2014).  In *Morgan v. AT&T Wireless Services, Inc.*, the appellate court found it sufficient that the plaintiffs alleged their reliance on a long-term advertising campaign, but

---

date is not in the complaint and Defendants do not provide any judicially noticeable exhibits in support.  (*See* Defs.' Reply at 3.)

likewise did not suggest that the plaintiffs had to have been exposed to the advertising campaign for a certain period of time. 177 Cal. App. 4th 1235, 1262 (2009). Indeed, the appellate court noted that at least one of the alleged misrepresentations were made in the same month that a plaintiff purchased the defendant's product. *Id.* at 1258 n.12. Finally, in *In re Oreck Corp.*, the district court found that the plaintiffs were not required to identify the specific advertisement that they saw even though many of the plaintiffs only described seeing a single infomercial or video advertisement. 2012 U.S. Dist. LEXIS 172869, at *4. Thus, Defendants' focus on how long a plaintiff was exposed to a campaign appears misplaced.

Defendants also argue that Plaintiffs could identify the advertisements because they are still "readily accessible in HPL's social-media feeds," as Plaintiffs admit that "hundreds of Hismile social-media posts remain on the platforms." (Defs.' Reply at 3.) But this argument only highlights the difficulty of identifying the specific advertisement; as Plaintiff points out, Defendant Hismile's TikTok account posts at a rate of 15 or more videos a day, which results in over **1,000** videos in the span of 67 days. (Pls.' Opp'n at 9; SAC ¶ 24.) Further, Plaintiffs allege that many of the videos use the same clips but in a different order or different actors using similar scripts and scenarios. (SAC ¶ 119.) To require that a plaintiff comb through hundreds to thousands of similar videos advertisements (assuming the viewed advertisement is still available) imposes a potentially insurmountable burden. As the Court previously observed, "[t]o find that Rule 9(b) requires a plaintiff to meet such a high standard would be the same as insulating a defendant from liability simply because they have created so many different types of advertisements that are then repeatedly pushed onto social media users." (Dismissal Order at 13.)

Finally, Defendants correctly point out that Plaintiffs did not comply with the Court's requirement that they identify the influencers and customer reviews upon which they relied. (Defs.' Mot. to Dismiss at 10.) The Court agrees that Plaintiffs fail to satisfy this requirement. Moreover, Plaintiffs' argument that they are only alleging liability based on fraudulent reviews or influencer endorsements is unavailing because Plaintiffs fail to explain how Defendants or the Court are to know if Plaintiffs themselves relied on fraudulent reviews or influencer endorsements. That said, it is not apparent that this undermines Plaintiffs' allegations regarding the advertising

campaign as a whole, particularly as the Court has found this is one of the rare cases where Plaintiffs do not need to specifically identify the advertisements upon which they relied.

Accordingly, the Court finds that Plaintiffs have satisfied Rule 9(b) at the pleading stage.

### B.   False or Misleading Statement

Having found that Plaintiffs have satisfied Rule 9(b), however, the Court finds that dismissal of the case is required because Plaintiffs have failed to identify a false or misleading statement because the assertion that Defendants' products deliver "instant teeth whitening" is non-actionable puffery.

As explained by the Ninth Circuit:

> [T]he determination of whether an alleged misrepresentation "is a statement of fact" or is instead "mere puffery" is a legal question that may be resolved on a Rule 12(b)(6) motion. A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance. Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim. "The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions." Thus, a statement that is quantifiable, that makes a claim as to the "specific or absolute characteristics of a product," may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery.

*Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (quoting *Cook, Perkiss, & Liehe v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)).

In its prior order, "the Court note[d] that it is not apparent that claims of 'instant' and 'dramatic' whitening are actionable[,] as opposed to non-actionable puffery." (Dismissal Order at 15.) Further, the Court observed that "[s]tatements that characterize the speed of an action with terms like 'fast' are frequently held to be puffery." *Perez v. Bath & Body Works, LLC*, No. 21-cv-05606-BLF, 2022 U.S. Dist. LEXIS 124992, at *13-14 (N.D. Cal. July 14, 2022). Thus, the Court warned that "Plaintiffs should be prepared to address this case law, including providing authority that supports their assertions that claims of 'instant' and 'dramatic' whitening are actionable." (Dismissal Order at 15.) Defendants now seek dismissal on the ground that Plaintiffs' claims of "instant" teeth whitening are non-actionable puffery. (Defs.' Mot. to Dismiss at 14.)

The Court finds that "instant" is non-actionable puffery because it is not a quantifiable

United States District Court
Northern District of California

10

statement, but a general, subjective claim about how quickly Defendants' products purportedly work.  Courts have found terms like "instantly" and "instantaneous" to be non-actionable puffery. *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1119 (C.D. Cal. 2021) (finding the claim "data is instantly factored in" to be non-actionable puffery); *Safoco, Inc. v. KLX Energy Servs., LLC* 2023 U.S. Dist. LEXIS 113449, No. 2:22-cv-0437-JRG-RSP, 2023 U.S. Dist. LEXIS 113449, at *8 (E.D. Tex. June 10, 2023) (finding the claim that "the system's pressure dump is almost instantaneous" to be non-actionable puffery).  Likewise, courts have found variations of the word "immediate" -- a definition or synonym of "instant"[3] -- to be non-actionable puffery.  *See Perez*, 2022 U.S. Dist. LEXIS 124992, at *13-14 (finding the claim that the product "immediately hydrates" skin to be non-actionable puffery"); *Yuielle v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 344-45 (S.D.N.Y. 2023) (finding that statements that a security platform "respond[s] immediately to any detected threat" to be non-actionable puffery); *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 501 (S.D.N.Y. 2023) (finding that promises that a company would "immediately suspend[] accounts once suspicious activity occurred" and "take immediate action if consumers notified it that their accounts had been breached" were vague or non-actionable puffery).

In their opposition, Plaintiffs argue that *Waller v. Hewlett-Packard Co.* found that "instant hands-free backup" was not puffery.  (Pls.' Opp'n at 16.)  *Waller*, however, did not discuss the "instant" promise or determine whether the defendant's advertisements were puffery, let alone conclude that "instant" did not constitute puffery.  Indeed, the terms "instant" and "puffery" are each mentioned once in the order.  *Waller*, No. 11cv0454-LAB (RBB), 2011 U.S. Dist. LEXIS 145276, at *5, 11 n.2 (S.D. Cal. Dec. 14, 2011).  Rather, the district court analyzed whether statements that the device was an "automatic, hands-free backup" of "all your important files the minute you plug in" with "no files to select" were likely to deceive when the system only backed up certain file types automatically.  *Id.* at *11-12.

---

[3] *Instant*, MERRIAM-WEBSTER, https://www.merriam-webster.com/thesaurus/instant (last visited Apr. 2, 2026); *Instant*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/thesaurus/instant (last visited Apr. 2, 2026); *What is Another Word for Instant?*, WORDHIPPO, https://www.wordhippo.com/what-is/another-word-for/instant.html (last visited Apr. 2, 2026).

11

In the alternative, Plaintiffs attempt to distinguish "instant" from exaggerations of speed, arguing that "descriptors such as 'fast' [are] inherently subjective" while "'instant,' by contrast, is binary and precise. Either whitening occurs immediately or it does not." (Pls.' Opp'n at 16.) Plaintiffs then point to advertisements depicting whitening happening within three to fifteen seconds, arguing that Defendants effectively defined what "instant" means by providing specific demonstrations of whitening in some of its video advertisements. (*Id.* at 17; *see also* SAC ¶¶ 97-101.) Plaintiffs' reliance on the fact that some advertisements show whitening happening within different time frames is far from a "binary and precise" description Plaintiffs rely upon; is whitening considered "instant" if it happens within three seconds or fifteen seconds? What if it occurred within twenty seconds or a minute? At what point in time would "instant" no longer be an accurate description?

At the hearing, Plaintiffs sought to define "instant" as occurring within thirty seconds, again pointing to advertisements that included video demonstrations. As Defendants point out, however, Defendants have never explicitly stated that whitening would occur within thirty seconds. Instead, Plaintiffs argued at the hearing that because "the video clips will not exceed [thirty seconds]," Defendants must be defining "instant" as occurring within thirty seconds. This is not persuasive; the fact that an advertisement containing the word "instant" cannot exceed thirty seconds does not mean an advertiser is automatically defining "instant" as being within thirty seconds. If, for example, an advertisement did not include a video demonstration of the products (and Plaintiffs do not suggest that every advertisement includes a video demonstration), it would not be reasonable to assume that use of the word "instant" would still be defined as occurring within thirty seconds simply because the advertisement lasts only thirty seconds.

In short, Defendants' description of its teeth whitening products as "instant" is ultimately a subjective exaggeration of speed, such that "instant" is not a specific, quantifiable claim that is likely to induce customer reliance. Rather, it is the type of "outrageous generalized statements . . . that are so exaggerated as to preclude reliance by consumers." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990). Indeed, the Court observes that many things are advertised as "instant" -- instant noodles, instant oatmeal, instant film, instant stain

United States District Court
Northern District of California

remover -- that are not literally instant but can take several minutes even if they are significantly faster than their non-instant counterparts. Accordingly, the Court simply cannot find that "instant teeth whitening" is an actionable misrepresentation that can support Plaintiffs' claims.

Because the Court finds that "instant teeth whitening" is non-actionable puffery, the Court finds that Plaintiffs' case must be dismissed in its entirety. *See Perez*, 2022 U.S. Dist. LEXIS 124992, at *13-14 (dismissing CLRA, FAL, and UCL claims based on non-actionable puffery); *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023) (finding that a puffery defense applied to N.Y. General Business Law claims); *Michael v. Honest Co.*, No. LA CV15-07059 JAK (AGRx), 2016 U.S. Dist. LEXIS 189116, at *39-40 (C.D. Cal. Dec. 6, 2016) (finding that statements constituting puffery cannot support California breach of warranty claim); *Mill-Run Tours, Inc. v. Windstream Servs., LLC*, 2017 U.S. Dist. LEXIS 105576, at *12 (S.D.N.Y. July 6, 2017) (dismissing New York breach of warranty claim because the statements at issue constituted non-actionable puffery); *Balistreri v. McCormick & Co.*, No. 5:22-cv-00349-EJD, 2023 U.S. Dist. LEXIS 162583, at *40 (N.D. Cal. Sep. 13, 2023) (dismissing California unjust enrichment claim because it was based on non-actionable puffery); *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644, 646 (S.D.N.Y. 2011) (dismissing New York unjust enrichment claim because it was based on non-actionable puffery).

## IV.    CONCLUSION

The Court GRANTS Defendants' motion to dismiss and DENIES Defendants' motion to strike as moot. Further, the Court finds that dismissal with prejudice is warranted. This is the third version of the complaint, and Plaintiffs have made clear therein that the alleged misrepresentation is "instant teeth whitening." As discussed above, "instant" is non-actionable puffery, and thus there is no way to salvage Plaintiffs' claims. Accordingly, the Court DISMISSES the case with prejudice.

IT IS SO ORDERED.

Dated: April 28, 2026

KANDIS A. WESTMORE
United States Magistrate Judge

13